[No. 25574. Department Two. July 3, 1935.]

THE STATE OF WASHINGTON, *Respondent,* v. A. O. WEHINGER, *Appellant.*[1]

*Wright & Wright (George G. Rinier,* of counsel), for appellant.

*Warren G. Magnuson* and *B. Gray Warner,* for respondent.

[1]Reported in 47 P. (2d) 35.

HOLCOMB, J.—This case was originally brought in a justice court of King county, Washington, who, after overruling a demurrer, found appellant guilty and assessed a fine against him, from which he appealed to the superior court. After the case reached the superior court, a jury trial was waived, and the case was submitted upon an agreed statement of facts, as follows:

"It is hereby stipulated and agreed, between counsel for the state, and counsel for the accused, that the facts in the above entitled matter are as follows:

"(1) That the defendant's name is 'A. O. Wehinger;' that he is residing in the city of Seattle.

"(2) That he is a graduate of the Palmer School of Chiropractic, of Davenport, Iowa, a school of national reputation and prominence, well qualified in its instruction as a chiropractic school.

"(3) That the defendant has not taken the examination for chiropractic practice, as provided by Chapter VII of an act defining physicians, surgeons and treatment of the sick, and particularly with sections 10098 to 10108, inclusive, of Remington's Revised Statutes.

"(4) That he would not have been permitted to take the examination, as provided in Chapter VII of the act defining physicians and surgeons, and treatment of the sick, if he had so applied for examination, unless he had first taken an examination before an examining committee, as provided in Chapter XIII of the same act pertaining to examinations of physicians and surgeons and others attempting to qualify for treatment of the sick. In other words, he would not have been permitted to take examination as a chiropractor until he had taken an examination in basic science, equivalent to *materia medica*.

"(5) That notwithstanding all of the foregoing, the defendant in Seattle, King County, Washington, did on or about the Ist day of July, 1934, use the title 'Chiropractor' by advertising in the newspaper, according to advertisement hereto attached, marked Exhibit 'A', and made a part of this stipulation. That

since said July 1, 1934, the defendant has continued to so advertise according to the copy of the advertisement hereto attached and referred to as Exhibit 'A'.

"Dated this 11th day of October, 1934."

The case was then taken under advisement by the trial court and arguments submitted by written briefs from respective counsel. During the course of the argument by briefs, counsel for the state suggested to the court that there was a mistake in the agreed statement of facts, in that the last four words in paragraph 4 thereof "equivalent to *materia medica*" had been inadvertently included therein and should be disregarded. Appellant objected to any change in the agreed statement in any particular. After having had the matter under advisement for some weeks, the trial court rendered a decision stating that the words, "equivalent to *materia medica*" in the agreed statement of facts would be disregarded. He thereupon adjudged appellant guilty and imposed a fine for the alleged offense. Before sentence, appellant moved for an order arresting judgment or, in the alternative, for a new trial, both of which motions were denied.

One of the grounds for a new trial was error of law occurring at the trial and excepted to by appellant, in that it was error by the court to grant the request of the state to amend the agreed statement of facts.

The errors assigned by appellant on appeal are first, in amending the agreed statement of facts; second, in overruling his motion in arrest of judgment and motion for a new trial; and third, in finding appellant guilty and imposing a fine.

Since the enactment of chapter 5, Laws of 1919, p. 19, chiropractic practice has been regulated by statute, Rem. Rev. Stat., §§ 10098 to 10111 [P. C. §§ 636c to 636s], inclusive.

After the passage of that law regulating chiropractic in 1927, the legislature passed another law requir-

ing applicants for chiropractic licenses to pass examinations in other subjects, which was denominated the basic science law, now codified as Rem. Rev. Stat., §§ 10185-1 to 10185-8 [P. C. §§ 3726-11 to 3726-18], inclusive. The first section of that act provides for the establishment of an examining committee of five members, learned respectively in the sciences of anatomy, physiology, chemistry, pathology, and hygiene, to conduct and assist in conducting examinations of all persons applying for licenses or certificates to practice medicine and surgery, osteopathy, osteopathy and surgery, chiropractic or drugless therapeutics in the state of Washington as required by law. Provision is then made that this committee should be appointed by the governor from the faculty lists of the University of Washington and Washington State College.

The second section prescribes that the examining committee shall conduct examinations in anatomy, physiology, chemistry, pathology, and hygiene at least twice in each year, at such times and places as the examining committee and director of licenses may determine. The third section prescribes that the examinations shall be written and shall be of such a nature as to constitute an adequate test as to whether the person so examined has such knowledge of the elementary principles of such sciences as taught at the University of Washington and Washington State College, or in any college or university accredited by the University of Washington, equivalent to one year's instruction of thirty-six weeks.

Section 10185-4 [P. C. § 3726-14] reads:

"Any person desiring to apply to the director of licenses for a license to practice medicine and surgery, osteopathy, osteopathy and surgery, chiropractic, or drugless therapeutics shall first present to the director of licenses his credentials provided by law evidencing his qualifications to be admitted to license or to take

the examination prerequisite to securing of such certificate or license and if the same are found satisfactory and the applicant is eligible to such examination, the said director of licenses shall issue to such applicant a certificate giving the name of such applicant and certifying that such applicant is entitled to take the preliminary examination provided for in this act, but without specifying the branch of therapeutics for which said applicant has applied for a license, and upon presentation of such certificate to said examining committee, together with an examining fee of ten dollars, said applicant shall be entitled to take the examination provided for in section 10185-3: Provided, that if such preliminary examination is conducted by the director of licenses as provided in section 10185-2, such preliminary examination may be given upon the payment of such ten dollars examining fee, and without such preliminary certificate.''

The fifth section establishes the minimum percentages necessary to be made by an applicant. The sixth section dispenses with a second examination on such subjects in cases where the existing law requires the examination in any one or more of the branches of anatomy, physiology, chemistry, pathology, or hygiene as a prerequisite to the issuance of the license applied for. The seventh section fixes the compensation to be paid members of the examining committee. The eighth and final section provides that the act shall not be construed or held to apply to or interfere in any way with the practice of religion or to regulate in any way any kind of treatment by prayer.

The original law regulating chiropractic practice also provided that applicants for license to practice such system should pass examinations in writing on anatomy, physiology, hygiene, symptomatology, nerve-tracing, chiropractic - orthopedy, principles of chiropractic and adjusting, as taught by chiropractic schools and colleges; and that such applicants should answer seventy-five per cent of all questions asked and should

not be entitled to receive a license if such applicant failed to answer correctly sixty per cent of the questions on any branch of the examination.

It is thus plain that two things only are included in the so-called basic science law (Rem. Rev. Stat., § 10185-1 [P. C. § 3726-11] *et seq.)*, which were not included in the chiropractic law, namely: Chemistry and pathology. *Materia medica* was not included in the basic science law nor in the original chiropractic law. It is also clear that the so-called basic science law includes physicians and surgeons as well as the other classes of healers, all of whom are regulated by law in this state, as well as the chiropractor, unless they have been previously examined and passed in one or more of the subjects specified.

The advertisement stipulated as that which appellant had published was one giving the outline of a female form and with a list of twenty-six human disorders that his advertising said he could find and remove the cause. All of the ailments were aligned with some part of the spine, with the vertebrae apparently bare.

■ For the purpose of eliminating useless discussion and the review of many statutes and decisions, about which much ado is made in the briefs of appellant, we grant these propositions: (1) Chiropractic is specifically defined by statute in this state, Rem. Rev. Stat., § 10098 [P. C. § 636c], *et seq.;* (2) chiropractic is distinguished from all other healing arts; (3) the use of drugs and instruments is not within the scope of chiropractic and would be illegal; and (4) chiropractic does not include and is outside of the scope of *materia medica,* which is forbidden.

The concession of those propositions by no means concedes that the so-called basic science act requires applicants for chiropractic licenses to pass examinations outside the scope of their profession as equiva-

lent to *materia medica*, or to require chiropractors to pass examinations in subjects which have no relation whatever to chiropractic, which would be a denial of liberty and due process of law and therefore unconstitutional and void.

"*Materia medica*" is defined by Webster's New International Dictionary as:

"Material or substance used in the composition of remedies;—a general term for all substances used as curative agencies in medicine. 2. That branch of medical science which treats of the nature and properties of all the substances employed for the cure of diseases."

"Pathology" is defined by the same author as: "The science treating of diseases, their nature, causes, progress, manifestations and results."

This definition, as everyone knows, is almost the same as that of symptomatology, which has always been included in the subjects upon which chiropractic practitioners must pass a satisfactory examination. ("Symptomatology" is defined by Webster as "The doctrine of symptoms; that part of medical science treating of symptoms of diseases; semeiology.") This has been required for the very good reason that, if a practitioner cannot ascertain the character of the ailment, he cannot intelligently treat it.

Anatomy has always been comprised in their subjects for examination; so has physiology, hygiene, nerve-tracing and chiropractic-orthopedy. One new subject, chemistry, has been added, which has been defined by Webster as: "The science that treats of the composition of substances and of the transformations which they undergo."

No one can justly say that the addition of chemistry to the list of subjects as one of the basic sciences, upon which applicants to practice chiropractic are required to have some knowledge, is an unreasonable require-

ment. It is a subject that is taught in high schools everywhere.

It is thus obvious that whoever signed the agreed statement of facts on behalf of the state, including the words "equivalent to *materia medica*", must have done so inadvertently, or intended to give his case away, which cannot be considered as probable on the part of the reputable attorneys for the state.

Appellant contends that the proper procedure to obtain a correction of the agreed statement of facts was not followed, since there was no formal motion for modification thereof. The request for modification, although not in the form of a motion, was a request made in the written brief to the court.

In *Levy v. Sheehan,* 3 Wash. 420, 28 Pac. 748, we held that, although the better practice would have been to make a formal motion to correct the agreed statement of facts, an informal action was equivalent to such a motion and should be allowed without further proofs.

The words considered stricken by the trial court and disregarded were so clearly foreign to the basic science law and also to the chiropractic law that, besides being inadvertent, they were nothing more than a legal conclusion. That was a matter which was for the trial court to determine, uninfluenced by stipulation of the parties or counsel. *Jones v. Madison County,* 72 Miss. 777, 18 So. 87; *Prescott v. Brooks,* 62 N. D. 771, 94 N. W. 88; *Luce v. Ash,* 28 S. D. 109, 132 N. W. 708; *Swift & Co. v. Hocking Valley Railway Co.,* 243 U. S. 281, 37 S. Ct. 287. In the last named case, in the opinion by Mr. Justice Brandeis, it was held that the court cannot be controlled by an agreement of counsel on a subsidiary question of law.

Nor can a court be controlled as to the legal construction from a given state of facts. 60 C. J. 60. Nor

will the language of an agreed statement of facts be so construed as to give it the effect of an admission of fact obviously intended to be controverted or the waiver of a right not plainly intended to be relinquished. 60 C. J. 62.

In the instant case, the state could have had no other intention than to controvert the fact which the trial court struck or disregarded and which we think was right.

*Stevenson v. Hazard,* 152 Wash. 104, 277 Pac. 450, was based upon a motion to set aside a very formal stipulation as to damages, in which we held that no independent action was necessary, upon the authority of *Levy v. Sheehan, supra.*

*Lincoln v. Lincoln Street Railway Co.,* 67 Neb. 469, 93 N. W. 766, strongly relied upon by appellant, was one where the stipulation was no more than a statement of an ultimate fact, but the court held that to have set it aside or modify it would have made it necessary to retry the whole case, and to require this to be done would have been an abuse of discretion.

Other cases cited from outside jurisdictions by appellant are also widely different matters of stipulation than that involved here.

We conclude, therefore, that there is no merit in the contention of appellant on that phase of the case.

The conclusion upon that matter somewhat simplifies the case on the other issue: That to require chiropractors to pass an examination in subjects which have no relation whatever to the functions of chiropractic healing would be a denial of liberty and of due process of law and therefore unconstitutional and void.

This court, in common with most courts in the union, has sustained legislation regulating the practice of medicine and surgery and the so-called other healing

arts and drugless healing. All such acts for the regulation of medicine, surgery, and chiropractic, have been sustained here and elsewhere as a valid exercise of the police power and not violative of any constitutional provision. *State v. Greiner,* 63 Wash. 46, 114 Pac. 897; *State Board of Medical Examiners v. Harrison,* 92 Wash. 577, 159 Pac. 769; *State ex rel. Hagen v. Superior Court,* 139 Wash. 454, 247 Pac. 942; *Laughney v. Maybury,* 145 Wash. 146, 259 Pac. 17, 54 A. L. R. 393; *State v. Verbon,* 167 Wash. 140, 8 P. (2d) 1083.

In *People v. Lewis,* 233 Mich. 240, 206 N. W. 553, 42 A. L. R. 1337, the Michigan supreme court upheld an act regulating the practice of the system of chiropractic and held that one desiring to practice that system is not deprived of the equal protection of the laws by requiring him, as a condition for securing a license, to pass an examination in anatomy, histology, embryology, physiology, chemistry, bacteriology, pathology, diagnosis, hygiene and public health. It will be observed that act contained more subjects in which a chiropractor is required to be reasonably proficient than our basic science law. This law was upheld, despite the fact that it was shown that such subjects were not taught in chiropractic schools.

In a case at which counsel for appellant cast some criticisms in oral argument, decided by the supreme court of Louisiana, *Louisiana State Board of Medical Examiners v. Fife,* 162 La. 681, 111 So. 58, 54 A. L. R. 594, that court held that chiropractors are not unconstitutionally denied the equal protection of the laws by being required to have a knowledge of *materia medica* and surgery to receive a license to practice their profession, when such knowledge is not required of osteopaths, dentists, chiropodists, and trained nurses; and that, under the act of that state, the practice of chiropractic is the practice of medicine.

While our law does not go to the extreme the statute of that state does, and we might possibly not go to the lengths that court did in sustaining such an act, it cannot be doubted that no one has a natural or absolute right to practice medicine or surgery; and that the state may, under its police power, regulate within reasonable bounds, for the protection of the public health, the practice of medicine and surgery by defining the qualifications one must possess before being licensed to practice the same; and that a chiropractor is deprived of no constitutional right by being required, before receiving a certificate to practice his profession, to have adequate knowledge of the subjects laid down by the statutes of this state.

A case greatly relied upon by appellant, *State v. Biggs,* 133 N. C. 729, 46 S. E. 401, 98 Am. St. 731, 64 L. R. A. 139, was a decision on appeal by one who was practicing without a license obtained from the state board of medical examiners, in which it does not appear to us that there was any statute regulating chiropractic, or these other healing arts, in that state, but only one regulating medicine and surgery, or any branches thereof, and osteopathy. We do not consider that case of any help to appellant.

Another case cited and relied upon by appellant, *State v. Armstrong,* 38 Idaho 493, 225 Pac. 491, 33 A. L. R. 835, was an appeal from a conviction by a chiropodist or corn doctor, in which the court said that the statutes do not provide an examination and license for chiropody. It was held that the right to follow a recognized and useful occupation is a right protected by the constitutional guaranty of liberty. The court there, however, did state sound principles as follows:

"Until 1923 the legislature of the state of Idaho had divided the practice of the healing art into the several divisions generally recognized, such as medicine and

surgery, osteopathy and chiropractic, requiring those practicing each branch of the art to undergo an appropriate examination and procure a license. It is clear that the purpose of these statutes was to protect the public health and conserve the public safety by requiring those practicing to be competent and qualified. The objects of such laws are, (1) to prevent people being mistreated by incompetents, and (2) to prevent the credulous from being misled and preyed upon.''

With those pronouncements, we concur.

There is nothing unreasonable in the legislative additional requirement so that it is a denial of due process of law.

It being undeniable that appellant has attempted to practice the healing art called chiropractic without first obtaining a license so to do, he was guilty as found by the trial court.

The judgment is affirmed.

MILLARD, C. J., MITCHELL, STEINERT, and BLAKE, JJ., concur.