[No. 14515-8-III.   Division Three.   July 30, 1996.]
CLYDE ROSS, ET AL., *Respondents*, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Appellant*.

---

788

*William R. Hickman, Marilee C. Erickson,* and *Reed McClure*; and *Timothy P. Cronin* and *Mullin, Cronin & Blair, P.S.,* for appellant.

*Kenneth L. Isserlis* and *Lee, Michaud & Isserlis, P.S.,* for respondents.

SCHULTHEIS, J. — Betty Ross had an accident in 1987 with an underinsured motorist (UIM) while driving her nonresident husband's car as a substitute for her own. State Farm Mutual Automobile Insurance Company invoked "owned by" or "available for regular use of" exclusions in Mrs. Ross's policy and denied her UIM claim on the basis her husband's car, which was not insured under the policy, was both owned by her and her "spouse," and available for her and his regular use. The Rosses filed suit, and on cross motions for summary judgment, the court determined Mrs. Ross had coverage: it found her nonresident husband was not a "spouse" within the terms of the policy and resolved a perceived policy ambiguity in the definition of "temporary substitute car" in her favor. The court dismissed the Rosses' claim for bad faith damages and awarded the Rosses their attorney fees without a requested enhancement. State Farm appeals the determination of UIM coverage and award of attorney fees. The Rosses cross-appeal the dismissal of their damages claim

and denial of their request for a 50 percent attorney fees enhancement. We affirm, though we decide the coverage issue in part on different grounds: because Mrs. Ross did not own her husband's car within the meaning of the policy and it was neither owned nor available for her regular use, the UIM exclusion did not apply.

At the time of the accident, Mrs. Ross was driving her husband Clyde's AMC Eagle because he had taken her Chevrolet Monte Carlo to Montana for service and repairs. Mr. Ross was living in Libby, Montana, because he had a job there, but he often spent weekends with Mrs. Ross, who lived and worked in Spokane. Both vehicles were insured by State Farm, but under separate policies because State Farm did not permit the Rosses to purchase one policy insuring both vehicles. The Washington policy insuring the Monte Carlo included UIM coverage, but the Montana policy insuring the Eagle did not.[1] State Farm denied coverage, contending Mrs. Ross's claims were not covered under either policy.

In January 1993 Mr. and Mrs. Ross commenced this action seeking a declaration of coverage, damages for violations of an insurer's duty of good faith under the Washington insurance code and the Consumer Protection Act (CPA), and attorney fees. The parties filed cross motions for summary judgment, and submitted two stipulated statements of facts. The court granted judgment to the Rosses on coverage, finding the Eagle was a covered temporary substitute car, and awarded them prevailing party costs of $120 and attorney fees of $13,194.50. The

---

[1]The Rosses purchased liability and uninsured motorist insurance in the Montana policy. They did not expressly reject underinsured motorist protection in either policy. Consequently, under Washington's mandatory UIM coverage law, the Washington policy provides both uninsured and underinsured coverage in addition to liability coverage. Montana does not have a mandatory UIM statute.

court granted judgment to State Farm on the claim for bad faith damages. Both parties appeal.

## STANDARD OF REVIEW

■ When reviewing an order of summary judgment, this court engages in the same inquiry as the trial court. RAP 9.12; *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). After considering all evidence and reasonable inferences in the light most favorable to the nonmoving party, summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Wilson*, 98 Wn.2d at 437.

■ Interpretation of an insurance policy is a matter of law, reviewed de novo. *Mutual of Enumclaw Ins. Co. v. Jerome*, 122 Wn.2d 157, 160, 856 P.2d 1095 (1993). Insurance policies should be construed in a fair, reasonable and sensible manner, consistent with the construction that would be given the policy by the average person purchasing insurance. *Id.* at 160. The purpose of insurance is to insure; therefore, inclusionary clauses are construed liberally in favor of coverage and exclusionary clauses are construed narrowly. *See McGreevy v. Oregon Mut. Ins. Co.*, 74 Wn. App. 858, 865, 876 P.2d 463 (1994), *aff'd*, 128 Wn.2d 26, 904 P.2d 731 (1995); *Prosser Comm'n Co. v. Guaranty Nat'l Ins. Co.*, 41 Wn. App. 425, 430, 700 P.2d 1188 (citing *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 99 Wn.2d 65, 68-69, 659 P.2d 509 (1983), *modified on reconsideration*, 101 Wn.2d 830, 683 P.2d 186 (1984)), *review denied*, 104 Wn.2d 1016 (1985).

■■ If language in an insurance contract is clear and unambiguous, the court may not modify the contract or create ambiguity where none exists. *Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 456, 760 P.2d 337 (1988); *Schelinski v. Midwest Mut. Ins. Co.*, 71 Wn. App. 783, 787, 863 P.2d 564 (1993). Language in an insurance policy that is reasonably susceptible to more than one commonsense interpretation

is ambiguous. *Jerome*, 122 Wn.2d at 161. Any ambiguity should be resolved so the doubtful provision in the contract will not unfairly devour the whole policy or relieve the insurer from liability fairly within the spirit of the policy. *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 907, 726 P.2d 439 (1986); *Riley v. Viking Ins. Co.*, 46 Wn. App. 828, 829, 733 P.2d 556, *review denied*, 108 Wn.2d 1015 (1987).

## THE POLICY

The Washington State Farm policy covering the Monte Carlo, issued to Mrs. Ross at her Spokane address, defines the following relevant terms:

**Non-Owned Car** — means a **car** not:

1. owned by,

2. registered in the name of, or

3. furnished or available for the regular or frequent use of:

**you, your spouse**, or any **relatives**.

**Spouse** — means **your** husband or wife while living with **you.**

**Temporary Substitute Car** — means a **car** not owned by **you** or **your spouse**, if it replaces **your car** for a short time. Its use has to be with the consent of the owner. **Your car** has to be out of use due to its breakdown, repair, servicing, damage or **loss**. A **temporary substitute car** is not considered a **non-owned car**.

**You** or **Your** — means the named insured or named insureds shown on the declarations page.

**Your Car** — means the **car** or vehicle described on the declarations page.

The liability coverage of the policy provides Mrs. Ross with coverage for the use of other cars as follows:

The liability coverage extends to the use, by an **insured**, of a

newly acquired car, a temporary substitute car or a non-owned car.

The policy also provides Mrs. Ross with underinsured motor vehicle coverage, but specifically provides:

THERE IS NO COVERAGE:

1.  FOR **BODILY INJURY** TO AN **INSURED** OR **PROPERTY DAMAGE** WHILE AN **INSURED** IS OPERATING OR **OCCUPYING**:

    (a) . . .

    (b) A MOTOR VEHICLE OWNED OR AVAILABLE FOR THE REGULAR USE OF **YOU, YOUR SPOUSE** OR ANY **RELATIVE,**

IF IT IS NOT INSURED UNDER THE LIABILITY COVERAGE OF THIS POLICY.

We agree with the trial court that the State Farm insurance policy provided UIM coverage for Mrs. Ross's use of her husband's car while her own covered car was being repaired, though our analysis differs.

### ANALYSIS

■ The purpose of the policy provisions at issue in this case is to provide coverage for a policyholder's isolated use of other automobiles, but to disallow the interchangeable use of other cars that are not covered by the policy. *Grange Ins. Ass'n v. MacKenzie*, 103 Wn.2d 708, 712, 694 P.2d 1087 (1985); *Dairyland Ins. Co. v. Ward*, 83 Wn.2d 353, 359, 517 P.2d 966 (1974). *See also* 7 AM. JUR. 2D *Automobile Insurance* § 236 (2d ed. 1980). The purpose of UIM coverage is to allow an insured party to recover those damages they would have received had the responsible party maintained adequate insurance. *Public Employees Mut. Ins. Co. v. Kelly*, 60 Wn. App. 610, 618, 805 P.2d 822, *review denied*, 116 Wn.2d 1031 (1991). Those purposes are met here.

Mrs. Ross's use of her husband's car is precisely the type of use contemplated by the temporary substitute car

clause: an isolated use of a noncovered car for a short period during repair of her own covered car. Her use of the Eagle in this manner did not significantly increase the insurer's risk (without a corresponding increase in premiums) or unfairly burden State Farm in any way. She paid premiums for liability and UIM coverage under her policy. The Rosses tried to add the Eagle to Mrs. Ross's policy (in which case it would have had the same coverage as the Monte Carlo), but State Farm would not allow them to do so. Therefore, they purchased the separate Montana policy solely for the Eagle.

State Farm contends the car Mrs. Ross was driving did not qualify as a temporary substitute car or a nonowned car because she and her spouse owned the car; thus, the car was not insured under the liability portion of the policy. Exclusion 1(b) in the UIM portion of the policy provides there is no coverage while Mrs. Ross is operating a car owned by her or her spouse, or a car available for the regular use of her or her spouse, if that car is not insured under the liability portion of the policy.

■ The trial court correctly concluded, however, that Mr. Ross was not Mrs. Ross's "spouse" as defined in the policy. Although he is her legal spouse, Mr. Ross was not "living with" Mrs. Ross; therefore, he was not her "spouse" within the terms of the policy. *See National Gen. Ins. Co. v. Sherouse*, 76 Wn. App. 159, 882 P.2d 1207 (1994), *review denied*, 126 Wn.2d 1009 (1995).

The trial court incorrectly concluded that the definition of "temporary substitute car" is internally inconsistent and, therefore, ambiguous, and that the ambiguity must be resolved in Mrs. Ross's favor.[2] The definition does not require that the Eagle both be and not be "a non-owned car." Considered in context with the definition of a non-

---

[2]We cannot determine how the court construed the "ambiguity" in favor of Mrs. Ross. The court referred to the temporary substitute car clause as an "exclusion" although it is not and did not address the ownership issue at all. The court seems to have concluded that whenever there is an ambiguity, there is coverage. If so, the court is mistaken.

owned car and with the policy's other provisions, the statement that "[a] temporary substitute car is not considered a non-owned car" merely clarifies that the two classifications are distinct from one another even though they both involve cars not owned by the insured or the insured's spouse.

The fundamental issue is whether Mrs. Ross "owned" the Eagle within the meaning of the policy. If she did, it was not a "temporary substitute car" and was not covered under the liability portion of the policy; therefore, the "owned by" exclusion would preclude UIM coverage. If she did not, only then must the applicability of the "available for regular use" exclusion be addressed.

There are no Washington cases directly on point. The policy in *Anderson v. American Economy Ins. Co.*, 43 Wn. App. 852, 854, 719 P.2d 1345 (1986) defined "covered auto" as any auto used as a temporary substitute for a covered car; therefore, Mr. Anderson's wife's car was covered under the liability portion of his policy. UIM coverage was excluded, however, because the car was owned by and available for the regular use of his wife, who was a member of his household and came within the definitions of "you" and a "family member." *Id.* at 855-56. Similar UIM exclusions precluded coverage in *Brown v. United Pac. Ins. Co.*, 42 Wn. App. 503, 505-06, 711 P.2d 1105 (1986) and *Schelinski v. Midwest Mut. Ins. Co.*, 71 Wn. App. 783, 786-90, 863 P.2d 564 (1993), but in those cases, too, the husbands were driving cars owned by their resident wives,[3] who came within the policy definitions of "you" or "any family member." That was not the case here.

The Washington State Farm policy does not define ownership, or what is meant by "a car not owned by you." The word "owner" has been held to be ambiguous in other contexts. *Farmers Ins. Co. v. U.S.F.&G. Co.*, 13 Wn. App.

---

[3]In each of these three cases the various cars were described as owned by the husband or the wife, without reference to joint ownership under community property law. We do not find general community property principles helpful in construing the insurance policy provisions at issue in this case.

836, 841, 537 P.2d 839 (1975). It is ambiguous in the current context, as well. Mrs. Ross's concession she was a legal owner of the Eagle under Washington community property law does not preclude her assertion she did not own the car within the meaning of the policy. Mr. Ross was the title owner and registered owner, and he had possession, care, control and management of the Eagle. Those are all indicia of ownership. *Id.* at 841. The average person could reasonably conclude the Eagle was owned by Mr. Ross, and not Mrs. Ross. (A reasonable person could also conclude they both owned the car. But we reject the Rosses' argument that it was not owned by either of them because it was owned by both of them; that is a strained and unnatural interpretation of the policy.)

Because the temporary substitute car coverage provision is an inclusionary clause, it should be liberally construed to provide coverage for those who can reasonably be embraced within its definition. 12 GEORGE J. COUCH, COUCH CYCLOPEDIA OF INSURANCE LAW § 45:221, at 513 (2d ed. rev. vol. 1981); *McGreevy v. Oregon Mut. Ins. Co.*, 74 Wn. App. 858, 865, 876 P.2d 463 (1994), *aff'd*, 128 Wn.2d 26, 904 P.2d 731 (1995); *Riley v. Viking Ins. Co.*, 46 Wn. App. 828, 829, 733 P.2d 556, *review denied*, 108 Wn.2d 1015 (1987); *Prosser Comm'n Co. v. Guaranty Nat'l Ins. Co.*, 41 Wn. App. 425, 430, 700 P.2d 1188, *review denied*, 104 Wn.2d 1016 (1985). Mrs. Ross is such a person. Finding the Eagle qualified as a temporary substitute car is fair to both parties: as noted above, Mrs. Ross was paying for the coverage and State Farm is not providing coverage for any risk not anticipated. She borrowed somebody else's car for a short time while hers was being fixed. That is what temporary substitute car coverage is designed for.

Since Mrs. Ross did not own the Eagle within the meaning of the policy and had liability coverage for it as a temporary substitute car, we must decide whether the UIM exclusion for motor vehicles "owned or available for" Mrs. Ross's regular use precludes coverage. We find it does not. First, the exclusion does not read "owned by or

available for the regular use of you," but rather "owned or available for the regular use of you." The Eagle clearly was not owned for the regular use of Mrs. Ross.

Second, although the parties stipulated the Eagle was available for her regular use, they also stipulated she visited Montana only once or twice and did not drive the Eagle there, and she drove it in Spokane only during the single week that her car was in Montana being repaired. Thus, in actuality, her use of the car was isolated. An isolated use is not regular use in common understanding.

In determining the applicability of the "available for regular use" exclusion, Washington courts have generally stressed it is the fact of regular use that is significant because the risk to the insurance company is related to the amount of time a car is driven. *E.g., MacKenzie*, 103 Wn.2d at 712; *Dairyland*, 83 Wn.2d at 359-60 & n.1; *Drollinger v. Safeco Ins. Co. of Am.*, 59 Wn. App. 383, 388, 797 P.2d 540 (1990), *review denied*, 116 Wn.2d 1003 (1991); *Westhaver v. Hawaiian Ins. & Guar. Co.*, 15 Wn. App. 406, 408, 549 P.2d 507 (1976). Here, there was no regularity of usage and no enhanced risk to State Farm. The exclusion was not designed for this single substitute use situation and should not be used to deprive Mrs. Ross of UIM coverage. UIM coverage is not to be " ' "whittled away by a myriad of legal niceties arising from exclusionary clauses." ' " *Bohme v. PEMCO Mut. Ins. Co.*, 127 Wn.2d 409, 417, 899 P.2d 787 (1995) (quoting *Kenworthy v. Pennsylvania Gen. Ins. Co.*, 113 Wn.2d 309, 313, 779 P.2d 257 (1989)).

State Farm's denial of coverage in this case was not unreasonable, however, given the concession that Mrs. Ross owned the Eagle. A reasonable denial of coverage — even if incorrect — is neither a violation of an insurer's duty of good faith nor an unfair or deceptive act prohibited by the CPA. *See Villella v. Public Employees Mut. Ins. Co.*, 106 Wn.2d 806, 821, 725 P.2d 957 (1986). The court properly dismissed the damages claim. *Gingrich v. Unigard Sec. Ins. Co.*, 57 Wn. App. 424, 433-34, 788 P.2d 1096 (1990).

■ State Farm challenges the court's attorney fees award on several grounds, but *McGreevy v. Oregon Mut. Ins. Co.*, 128 Wn.2d 26, 904 P.2d 731 (1995) decided this issue adversely to State Farm in all respects. Because the Rosses had to assume the burden of legal action to obtain the benefit of the insurance contract, they were entitled to recover their costs and attorney fees. *Id.* at 38-40.

■ Whether the Rosses were also entitled to an enhancement of their attorney fees was for the trial court to decide, and unless the court abused its discretion, we will not disturb its decision. *Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 335, 858 P.2d 1054 (1993); *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 598-99, 675 P.2d 193 (1983). The Rosses requested fees in the amount of $20,269.44, which included a 50 percent lodestar enhancement, but the court awarded them only $13,194.50. The court denied the request for an enhancement on the basis the issues were not sufficiently unique and the lodestar computation method is inapplicable to this type of case as a matter of law. The Rosses contend both reasons are wrong.

■ The court's conclusion that the lodestar method of calculating fees does not apply in this type of case is wrong.[4] *See State Farm Mut. Auto. Ins. Co. v. Johnson*, 72 Wn. App. 580, 595, 871 P.2d 1066, *review denied*, 124 Wn.2d 1018 (1994). The "lodestar" method set out in *Bowers*, 100 Wn.2d at 593-602, appears to be the accepted starting point for all attorney fee determinations. *Absher Constr. Co. v. Kent Sch. Dist. No. 415*, 79 Wn. App. 841, 846-47, 905 P.2d 1229, 917 P.2d 1086 (1995). The error, however, is harmless because the court correctly established a lodestar fee in the manner set forth in *Bowers*, and that amount has not been challenged by either party.

[4]From the court's oral decision on the attorney fees issue and the way it actually calculated the amount of the award, it is apparent the court meant an enhancement is not appropriate when it stated "I don't think that the Lodestar is appropriate in this case." That error was carried over into the court's written findings of fact and conclusions of law.

After calculating a lodestar fee, the court should consider whether it needs adjustment either upward or downward to reflect factors not already taken into consideration. *Fisons*, 122 Wn.2d at 334; *Bowers*, 100 Wn.2d at 598. Adjustments to the lodestar are considered under two broad categories, the contingent nature of success and the quality of work performed, and the party proposing a deviation bears the burden of justifying it. *Fisons*, 122 Wn.2d at 334-36; *Bowers*, 100 Wn.2d at 598.

Here, the court determined an enhancement was not justified because the case was not complex, technical or unique. It also considered the fact the case was taken on a contingent fee basis when it allowed counsel's request for an hourly fee of $125 (instead of the $90 to $100 State Farm advocated). The Rosses have not established an abuse of discretion.

The Rosses are entitled to their attorney fees on appeal. RAP 18.1; *McGreevy*, 74 Wn. App. at 874; *McGreevy*, 128 Wn.2d at 40.

Affirmed.

SWEENEY, C.J., and THOMPSON, J., concur.

Reconsideration denied August 29, 1996.

Review granted at 130 Wn.2d 1022 (1997).