940 P.2d 252 (1997)
CLYDE ROSS, ET AL., Respondents,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner.
Number 64564-7.
Supreme Court of Washington.
Argued May 21, 1997.
Decided July 17, 1997.
*253 Reed McClure, William R. Hickman, Danielle A. Hess, Seattle, for Petitioner.
Lee, Michaud & Isserlis, P.S., Kenneth L. Isserlis, Spokane, for Respondents.
Bryan P. Harnetiaux, Debra L. Stephens, Spokane, amicus curiae on behalf of Washington State Trial Lawyers Ass'n.
SMITH, Justice.
Petitioner State Farm Mutual Automobile Insurance Company seeks review of a Court of Appeals decision which affirmed a summary judgment by the Spokane County Superior Court which granted underinsured motorist insurance coverage to Respondents Clyde and Betty L. Ross, husband and wife, under a policy on an automobile registered in the wife's name and insured in Washington for an accident the wife had in Washington while driving an automobile registered in the husband's name and insured in Montana. This Court granted review. We reverse.

QUESTION PRESENTED
The question presented in this case is whether a Washington resident, a married woman, injured in the State of Washington while driving an automobile insured in her name and the name of her husband by State Farm Insurance Company (State Farm) and registered only in the name of her husband in Montana, may recover Underinsured Motorist (UIM) benefits under another policy issued to them by State Farm covering an automobile registered and insured only in her own name in the State of Washington when that policy provides no UIM coverage for a "motor vehicle owned or available for the regular use of [the insured], [the insured's] spouse or any other relative, if it is not insured under the liability coverage of [the] policy."

STATEMENT OF FACTS
The facts in this case were stipulated by the parties.[1] Respondent Betty L. Ross was driving a 1980 AMC Eagle in Spokane, Washington on February 19, 1987 when she was injured in a collision with a Pizza Haven vehicle.[2]
Respondents Ross at all times material were husband and wife, living in the State of Washington and maintaining their family residence in Spokane. Because of work opportunities Respondent Clyde Ross maintained a temporary residence in Libby, Montana. His wife maintained the family residence in Spokane.
After moving to Washington about five years earlier, Respondents acquired a 1977 Chevrolet Monte Carlo, registered to Respondent Betty L. Ross and licensed in the State of Washington; and a 1980 AMC Eagle, *254 registered to Respondent Clyde Ross and licensed in the State of Montana where he was employed.[3] Both automobiles were insured by State Farm:

------------------------------------------------------------------------------------------------
 Automobile Automobile
 Registered to Betty L. Ross Registered to Clyde Ross
------------------------------------------------------------------------------------------------
Vehicle 1977 Chevrolet Monte Carlo 1980 AMC Eagle
Location Spokane, Washington Libby, Montana
Insurance State Farm Insurance State Farm Insurance
 Washington Policy Number Montana Policy Number
 2615-663-A20-47 XXXX-XXX-XX
-------------------------------------------------------------------------------------------------

The vehicles were insured under two separate State Farm policies because State Farm would not insure the two automobiles under the same policy.
The 1980 AMC Eagle had a Montana certificate of title showing the owner's name and address as "Ross, Clyde E., Box 375, Libby, MT 59923."[4] It was purchased on September 30, 1986 in Montana and principally garaged there.[5] State Farm of Montana insured the Eagle for liability and uninsured motorist coverage, but not for underinsured motorist coverage.[6] Although Mr. Ross maintained a temporary residence in Montana, he would return to Washington on weekends to spend time with his wife.[7]
Respondents Ross could have elected to have underinsured motorist coverage under the Montana policy. They did not.[8] Under Montana law, they would not then be covered for it.[9] Respondents could have elected not to have underinsured motorist coverage under the Washington policy. They did not.[10] But under Washington law, they would have underinsured motorist coverage.[11] Thus the State Farm of Washington policy on the 1977 Chevrolet Monte Carlo does provide underinsured motorist coverage while the State Farm of Montana policy on the 1980 AMC Eagle does not.[12]
Because of her employment, Ms. Ross lived in Spokane, Washington where she maintained the family residence. She usually drove the Chevrolet Monte Carlo which was registered in her name and principally garaged in Washington. State Farm of Washington insured the Monte Carlo for liability and uninsured and underinsured motorist coverage.[13]
The weekend before the accident the Rosses exchanged automobiles because the Monte Carlo required repairs and Mr. Ross took it to Montana for that purpose.[14] Ms. Ross was driving the Eagle in Spokane when she was involved in the accident. Respondents stipulated the Eagle was available for Ms. Ross' regular use "either as a driver or passenger, when she and her husband were together either in Washington or Montana."[15] *255 She stated that even though she could have driven the Eagle during her infrequent visits to Montana, she actually only drove it during the week the Monte Carlo was in Montana for repairs.
The parties filed cross motions for summary judgment in the Spokane County Superior Court.[16] On November 18, 1994, the Honorable Richard J. Schroeder granted partial summary judgment in favor of Respondents Ross, determining that the State Farm of Washington policy provided underinsured motorist coverage for the loss incurred by Ms. Ross while driving the Eagle on February 19, 1987.[17] The court also granted Respondents' request for attorney fees and costs as the prevailing parties on their UIM claim.[18] The court denied Respondents' claims under the Washington Insurance Act and Washington Consumer Protection Act. Those claims are not before this court.
On December 7, 1994, State Farm filed a notice of appeal to the Court of Appeals, Division III.[19] That court, the Honorable John A. Schultheis writing, affirmed the trial court.[20] It concluded Respondents Clyde Ross and Betty L. Ross were not "spouses" as defined in the policy because, although Mr. Ross was Ms. Ross'"legal spouse," he was not in fact "living with" her at the time of the accident as the policy required under its definition of "spouse."[21] The court considered all the circumstances pertaining to ownership of the Eagle before concluding that, even though it was stipulated that Ms. Ross owned the Eagle, it referred to legal ownership under Washington community property law and not ownership contemplated by the policy.[22] The court also determined the Eagle was a "temporary substitute" vehicle under the policy and was not available for Ms. Ross' regular use and that her isolated use of the automobile did not amount to regular use under terms of the policy.[23]
On August 16, 1996, State Farm filed a "Motion to Reconsider or, in the Alternative, to Depublish [sic] Opinion." On August 29, 1996, Chief Judge Dennis J. Sweeney denied the motion. This Court granted review on January 7, 1997.

DISCUSSION

STANDARD OF REVIEW
This case was decided in the trial court on a motion for summary judgment upon stipulated facts.[24] "A summary judgment may not be granted unless there is no genuine issue as to any material fact."[25] Because the facts were stipulated, there is no dispute of material facts. "Where there are no relevant facts in dispute, the applicable standard of review is de novo review of lower court decisions regarding insurance coverage."[26] The *256 applicable coverage depends upon the language of the insurance policy. "The insurance policy must be given a fair, reasonable, and sensible construction as would be given by an average insurance purchaser."[27] "The interpretation of insurance policy language is a question of law."[28] This court has stated that
In construing the language of an insurance policy, the entire contract must be construed together so as to give force and effect to each clause. If the language in an insurance contract is clear and unambiguous, the court must enforce it as written and may not modify the contract or create ambiguity where none exists. However, if the policy provision on its face is fairly susceptible to two different but reasonable interpretations, the policy is ambiguous and the court must attempt to discern and enforce the contract as the parties intended.[29]
If the portion of the policy being considered is an inclusionary clause in the insurance policy, the ambiguity should be liberally construed to provide coverage whenever possible.[30] However, the basic principle that applies to exclusionary clauses in insurance contracts is that any ambiguity should be "most strictly construed against the insurer."[31] The fundamental public policy underlying the Washington UIM provision is full compensation for victims of automobile accidents.[32]

ARGUMENTS OF THE PARTIES
Petitioner State Farm argues the Montana policy on the AMC Eagle does not provide underinsured motorist coverage; and because the Pizza Haven driver did have insurance, the uninsured motorist provision in the Eagle policy is not applicable. Petitioner asserts that in order to have underinsured motorist coverage on the Eagle, Respondents were required to specifically request and purchase it under the Montana policy; but they did not. We address only the Washington policy on the Chevrolet Monte Carlo in this opinion because the parties do not otherwise address the Montana policy on the AMC Eagle.
"An underinsured motorist is one causing injury whose [liability] coverage is insufficient to meet the damages inflicted. When an underinsured motorist causes injury, the insurance company of the injured party carrying UIM steps into the shoes of the negligent underinsured and supplements [the] policy."[33] An uninsured motorist is one who does not have any liability insurance.[34] The purpose of uninsured motorist coverage is to provide an injured party recovery for those damages which would have been recovered if the responsible party had maintained liability insurance.[35]
The State Farm of Washington policy for the Monte Carlo provides coverage for an insured driver while driving a temporary *257 substitute vehicle.[36] Because this is an inclusionary provision in the policy, it should be liberally construed. The policy defines "temporary substitute car" as "a car not owned by you or your spouse, if it replaces your car for a short time.... Your car has to be out of use due to its breakdown, repair, servicing, damage or loss."[37] The policy also contains exclusions to UIM coverage. The policy does not provide coverage for bodily injury to an insured while that person is operating or occupying a "vehicle owned or available for the regular use of [the insured, the insured's] spouse or any other relative."[38]
Petitioner State Farm claims the Washington policy on the Monte Carlo does not apply to the accident which occurred while Ms. Ross was driving the AMC Eagle. It argues that if the Court of Appeals had acknowledged the facts stated in the stipulation, it would have determined there was no UIM coverage under the stipulated facts. Petitioner argues that, under the rules of construction and the stipulated facts, the UIM provision in the Washington policy does not apply to the AMC Eagle.[39]
All parties acknowledge that factual stipulations are generally binding on the parties and on the court.[40] However, they do not agree on the question whether the court applied the stipulated facts to the insurance policy or whether the court ignored the stipulated facts. Petitioner argues the court ignored the stipulated facts when it concluded that under the policy Mr. Ross was not the spouse of Ms. Ross, that Ms. Ross did not own the Eagle, and that the Eagle was not available for her regular use.
Respondents assert that the parties stipulated only to the existence of certain facts, not to the "legal effect" of those facts.[41] They state that a factual stipulation does not control a court's legal determination.[42] This is a mixed question of fact and law.[43]
Respondents stipulated they were "married on November 14, 1963 and have remained married to this date and at all times material to this lawsuit."[44] The stipulation did not refer to them as "spouses," but they meet the common definition of the word, which is a "man and a woman joined in wedlock."[45] However, the State Farm of Washington insurance policy specially defines "spouse" as "your husband or wife while living with you."[46] In this case the court did not ignore the fact of the Rosses' long-term intact marriage, but concluded that because Ms. Ross was living in Washington while Mr. Ross was living in Montana, he was not her "spouse" under the specific language of the policy. Thus, although the court applied the stipulated facts to the policy, it nevertheless determined Mr. Ross was not Ms. Ross' spouse under the language of the policy, even though they have been legally married and have been husband and wife for more than thirty years.
*258 The court then considered ownership of the AMC Eagle. The stipulated facts state that "[a]t the time of the incident, Betty L. Ross and her husband, Clyde Ross, owned two vehicles."[47] It was also stipulated the Eagle "was purchased with funds which Mr. Ross had earned while he and [Ms.] Ross were married...."[48] The court also considered other stipulated facts showing indicia of ownership. "Mr. Ross was the title owner and registered owner, and he had possession, care, control and management of the Eagle."[49] The court stated the word "owner" can be ambiguous and the court has found it ambiguous in other contexts.[50] The court concluded that while Ms. Ross may legally own the Eagle under Washington community property law, that did not mean she owns it under the language of the State Farm of Washington policy.
The court considered the exclusions under the UIM provision which disallow coverage for a "vehicle owned or available for the regular use" of the insured. The Court of Appeals determined the Eagle "clearly was not owned for the regular use of Ms. Ross."[51] The purpose of exclusionary clauses is to "provide coverage for isolated use without the payment of an additional premium, but to disallow the interchangeable use of other cars which are not covered by the policy."[52]
In considering "regular use," this Court concluded a regular use exclusion did not apply to an isolated "special" use of a vehicle.[53] "[I]t is the fact of regular use and not the purpose of that use that is the relevant issue. An insurance company's legitimate interest is in preventing an increase in the quantum of risk without a corresponding increase in the premium; the risk to the insurance company is related only to the amount of time the car is driven, not to the reason that car is driven."[54]
Respondents stipulated the AMC Eagle "was available for the regular use of Betty L. Ross, either as a driver or passenger, when she and her husband were together either in Washington or Montana.... Although she could have driven the Eagle during these visits to Montana, she never did so. Betty L. Ross drove the car in Washington only during February 1987 while the Monte Carlo she ordinarily drove was being repaired in Montana."[55] The vehicles were individually garaged in different states and each automobile was driven almost exclusively by one spouse or the other,[56] but the Rosses under the stipulation acknowledged that the only time Ms. Ross had ever driven the AMC Eagle was the week of the accident.
Petitioner cites two statutes to support its contention that insurance policies should be read in their entirety and that no modification is valid unless it is in writing and *259 made a part of the policy.[57] Petitioner correctly states the interpretation of insurance policy language is a question of law.[58] Clear policy language must be enforced as written and the policy should be given the fair, reasonable and sensible construction that would be given by the average person purchasing insurance.[59] Petitioner also states "the court is directed to avoid strained or forced construction which might lead to absurd or nonsensical results."[60] Petitioner suggests the policy construction given by the Court of Appeals led to an absurd result when it concluded that under the language of the policy Ms. Ross did not own the Eagle and it was not available for her regular use.
State Farm claims the Rosses were spouses, that Ms. Ross owned the Eagle and it was available for her "regular use," even though the Rosses could not obtain coverage for both the Chevrolet Monte Carlo and the AMC Eagle under one policy with State Farm.[61]
The Court of Appeals and the trial court were in error in concluding the State Farm of Washington insurance policy on the 1977 Chevrolet Monte Carlo automobile provided UIM coverage for Respondent Betty L. Ross when she was driving the 1980 AMC Eagle automobile while the Monte Carlo was being repaired.
Under the stipulation of the parties, it is not logical to conclude that Respondents Clyde and Betty L. Ross were not spouses and that the two of them did not own both the 1977 Chevrolet Monte Carlo and the 1980 AMC Eagle. Nor is it logical to conclude that the Rosses were not living with each other. The exclusionary provisions of the State Farm of Washington policy on to the 1977 Chevrolet Monte Carlo are clear and unambiguous. The Rosses are bound by the terms of that policy. They are not entitled to UIM coverage under the stipulated facts in this case.

ATTORNEY FEES
Respondents Ross seek an award of attorney fees under Rule of Appellate Procedure (RAP) 18.1.[62] Petitioner does not address this issue in its brief to this Court.[63] An insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees.[64] But under our decision in this case Respondents are not entitled to attorney fees on appeal.

*260 SUMMARY AND CONCLUSIONS

The interpretation of an insurance policy is a question of law.[65] Courts should interpret the policy with a fair, reasonable and sensible construction.[66] Where there is an ambiguity, an inclusionary clause in an insurance policy should be construed liberally, while an exclusionary clause should be construed strictly against the insurer.[67] There is no ambiguity in the relevant provisions of the policy in this case.
Stipulated facts are generally binding on the parties and the court. However, a factual stipulation does not control the legal determination to be made by the court.[68] This is a mixed question of fact and law.[69] Under the stipulated facts and the law in this case, Petitioner State Farm is entitled to favorable judgment on review by this Court.
The Court of Appeals and the trial court erred in determining Respondent Clyde Ross was not Respondent Betty L. Ross' spouse under language of the State Farm of Washington policy. That policy specially defines "spouse" as "your husband or wife while living with you." Respondents Ross at all times relevant to this case have been husband and wife since their marriage on November 4, 1963. Ms. Ross maintained the family residence in Spokane, Washington while Mr. Ross maintained a temporary residence in Libby, Montana because of his employment. It cannot be concluded they were not "living with" each other as husband and wife.
Notwithstanding title registration of the 1977 Chevrolet Monte Carlo in Ms. Ross' name only and title registration of the 1980 AMC Eagle in Mr. Ross' name only, the Court of Appeals and the trial court were not correct in concluding Ms. Ross was not an owner of the AMC Eagle.
In determining "regular use," this court has stated that the "risk to the insurance company is related only to the amount of time the car is driven, not to the reason it is driven."[70] An insurance company's legitimate interest is in preventing an increase in the quantum of risk without a corresponding increase in the premium.[71]
State Farm Insurance Company is entitled to insist upon the terms of its Washington policy issued to Respondents for the 1977 Chevrolet Monte Carlo registered in the name of Betty L. Ross in denying her underinsured motorist coverage while driving the 1980 AMC Eagle registered in Montana in the name of her husband, Respondent Clyde Ross.
We reverse the Court of Appeals, Division III, which affirmed the Spokane County Superior Court in granting summary judgment in favor of Respondents extending UIM coverage under a State Farm insurance policy to Respondent Betty L. Ross for the accident she had in Spokane, Washington on February 19, 1987 while driving an automobile registered in Montana in the name of her husband, Respondent Clyde Ross, and insured under another policy with State Farm.
DOLLIVER, GUY, JOHNSON, TALMADGE and SANDERS, JJ., concur.
DURHAM, C.J., not participating.
ALEXANDER, Justice (concurring).
I agree with the result reached by the majority. I write this concurrence simply to underscore what I believe is the importance of the stipulation entered into by the parties. The critical issue in this case, which was correctly identified by the Court of Appeals, is "whether Mrs. Ross `owned' the Eagle within the meaning of the policy." Ross v. *261 State Farm Mut. Auto. Ins. Co., 82 Wash. App. 787, 796, 919 P.2d 1268 (1996). That issue is important because if Betty L. Ross owned the Eagle, it was not a temporary substitute car under the liability portion of the policy and no Underinsured motorist coverage would be available to Mrs. Ross under the policy.
Resolution of that issue is controlled by the stipulation of the parties to the effect that Mrs. Ross owned the Eagle. Stipulation of Facts, Clerk's Papers at 15. In the light of that stipulation, the Court of Appeals' conclusion that Mrs. Ross did not own the Eagle is inexplicable. It is also error because, absent a reason to not hold the parties to their stipulation, it should be binding on them and the court. See Reilly v. State, 18 Wash.App. 245, 253, 566 P.2d 1283 (1977).
Even if a conclusion that Mrs. Ross did not own the car was justified, notwithstanding the stipulation, coverage would still be excluded if the Eagle was available for her regular use. Again, Mrs. Ross stipulated that the vehicle was available for her regular use. The exclusion, therefore, applies. In short, there is no coverage and the Court of Appeals should be reversed.
MADSEN, J., concurs.
NOTES
[1] See Stipulation of Facts, Spokane County Superior Court Cause Number XX-X-XXXXX-X (Stipulation of Facts), Clerk's Papers at 14-17; Supplemental Stipulation of Facts, Spokane County Superior Court Cause Number XX-X-XXXXX-X (Supplemental Stipulation of Facts), Clerk's Papers at 98-102.
[2] Respondent Betty L. Ross settled with Pizza Haven for the policy limit of $25,000.00. Her injuries from the accident exceeded the amount recovered. Neither Pizza Haven, its driver, nor its insurer is a party to this lawsuit.
[3] Supplemental Stipulation of Facts, Clerk's Papers at 98-102.
[4] Id. at 98.
[5] See Stipulation of Facts, Clerk's Papers at 15. Supplemental of Facts, Clerk's Papers at 98-99.
[6] State Farm of Montana policy number XXXX-XXX-XX
[7] From July 1985 to October 1987, Clyde Ross did not have any vacation time. There were also weeks when he worked six days. While he had a key to the Spokane house and occasionally received mail there, he did not keep personal property there. He was registered to vote in Montana, paid Montana taxes, and had a Montana driver's license. See Clerk's Papers at 192-93, 208.
[8] See Stipulation of Facts, Clerk's Papers at 15.
[9] See id. at 17.
[10] See id. at 16.
[11] See RCW 48.22.030.
[12] See Stipulation of Facts, Clerk's Papers at 15-16.
[13] State Farm of Washington policy number 2615-663-A20-47.
[14] See Clerk's Papers at 200, 220.
[15] Supplemental Stipulation of Facts, Clerk's Papers at 99.
[16] See Plaintiffs' Motion for Summary Judgment, Spokane County Superior Court Cause Number XX-X-XXXXX-X, Clerk's Papers at 88-89; Memorandum of Authorities in Support of Plaintiffs' Motion for Summary Judgment, Spokane County Superior Court Cause Number XX-X-XXXXX-X, Clerk's Papers at 69-86; Defendant State Farm's Memorandum of Authorities in Support of Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment, Spokane County Superior Court Cause Number XX-X-XXXXX-X, Clerk's Papers at 90-97.
[17] See Order on Cross Motions for Summary Judgment, Spokane County Superior Court Cause Number XX-X-XXXXX-X, Clerk's Papers at 362-64.
[18] See id.
[19] See Defendant's Notice of Appeal to Division III of the Washington State Court of Appeals Cause Number XX-X-XXXXX-X, Clerk's Papers at 360-61.
[20] See Ross v. State Farm, 82 Wash.App. 787, 919 P.2d 1268 (1996).
[21] See id. at 795, 919 P.2d 1268.
[22] See id. at 796-97, 919 P.2d 1268.
[23] See id. at 797-98, 919 P.2d 1268.
[24] Stipulation of Facts, Clerk's Papers at 14-17. Supplemental Stipulation of Facts, Clerk's Papers at 98-100.
[25] Roller v. Stonewall Ins. Co., 115 Wash.2d 679, 682, 801 P.2d 207 (1990) (citations omitted).
[26] McDonald v. State Farm Fire and Casualty Co., 119 Wash.2d 724, 730-31, 837 P.2d 1000 (1992) (citing Stonewall Ins. Co., 115 Wash.2d at 682, 801 P.2d 207).
[27] Mid-Century Ins. v. Henault, 128 Wash.2d 207, 213, 905 P.2d 379 (1995).
[28] Stonewall Ins. Co., 115 Wash.2d at 682, 801 P.2d 207 (citing State Farm General Ins. Co. v. Emerson, 102 Wash.2d 477, 480, 687 P.2d 1139 (1984)).
[29] Transcontinental Ins. Co. v. Washington Public Utilities Districts' Utility System, 111 Wash.2d 452, 456-57, 760 P.2d 337 (1988) (citations omitted).
[30] See Riley v. Viking Ins. Co., 46 Wash.App. 828, 829, 733 P.2d 556 (1987) (citation omitted).
[31] Phil Schroeder, Inc. v. Royal Globe Ins. Co., 99 Wash.2d 65, 68, 659 P.2d 509 (1983) (citation omitted), modified on reconsideration, 101 Wash.2d 830, 683 P.2d 186 (1984). In the modification opinion, the Court specifically reaffirmed the portion of the original opinion containing the quoted passage. See 101 Wash.2d at 831, 683 P.2d 186.
[32] See Tissell v. Liberty Mutual Ins. Co., 115 Wash.2d 107, 111, 795 P.2d 126 (1990).
[33] Jain v. State Farm Mutual Automobile Ins. Co., 130 Wash.2d 688, 692, 926 P.2d 923 (1996) (emphasis added) (citing RCW 48.22.030(1) and Britton v. Safeco Ins. Co. of America, 104 Wash.2d 518, 531, 707 P.2d 125 (1985)).
[34] See Britton, 104 Wash.2d at 526, 707 P.2d 125.
[35] See id. at 522, 707 P.2d 125 (citing Touchette v. Northwestern Mut. Ins. Co., 80 Wash.2d 327, 494 P.2d 479 (1972)).
[36] "The liability coverage extends to the use, by an insured, of a newly acquired car, a temporary substitute car or a non-owned car." (emphasis omitted) State Farm Automobile Insurance Company policy, Clerk's Papers at 48.
[37] Id. at 44 (emphasis omitted).
[38] Id. at 58 (emphasis omitted).
[39] Supplemental Brief of Petitioner State Farm Mutual Automobile Insurance Company (Supplemental Brief of Petitioner) at 12.
[40] See Cook v. Vennigerholz, 44 Wash.2d 612, 615, 269 P.2d 824 (1954).
[41] Supplemental Brief of Respondents Clyde Ross and Betty L. Ross, at 19.
[42] State v. Wehinger, 182 Wash. 360, 367, 47 P.2d 35 (1935) ("Nor can a court be controlled as to the legal construction from a given state of facts.").
[43] See Oregon Mutual Ins. Co. v. Fonzo, 2 Wash. App. 304, 306-07, 469 P.2d 989 (1970) (The court found that the phrase "then and there under the control of Stephen D. Cottrell" was not a finding of fact but a conclusion of law.); Wehinger 182 Wash. at 367, 47 P.2d 35 ("the court cannot be controlled by an agreement of counsel on a subsidiary question of law.... Nor can a court be controlled as to the legal construction from a given state of facts.").
[44] Supplemental Factual Stipulation, Clerk's Papers at 99.
[45] Webster's New International Dictionary 2438 (2d ed. 1949).
[46] State Farm Automobile Insurance Company Policy, Clerk's Papers at 44 (emphasis added).
[47] Stipulation of Facts, Clerk's Papers at 15.
[48] Supplemental Stipulation of Facts, Clerk's Papers at 99.
[49] Ross v. State Farm, 82 Wash.App. 787, 797, 919 P.2d 1268 (1996). See also Stipulation of Facts, Clerk's Papers at 15; Supplemental Stipulation of Facts, Clerk's Papers at 98-99.
[50] See Farmers Ins. Co. v. USF&G Co., 13 Wash. App. 836, 841, 537 P.2d 839 (1975) (the court states the term "owner" may include both the title owner, legal or equitable, as well as the possessor of the automobile).
[51] Ross, 82 Wash.App. at 798, 919 P.2d 1268.
[52] Grange Ins. v. MacKenzie, 103 Wash.2d 708, 712, 694 P.2d 1087 (1985). (citation omitted).
[53] Palmer v. Glens Falls Ins. Co., 58 Wash.2d 88, 90, 360 P.2d 742 (1961).
[54] Grange Ins., 103 Wash.2d at 712, 694 P.2d 1087 (emphasis omitted).
[55] Supplemental Stipulation of Facts, Clerk's Papers at 99.
[56] See Grange Ins. 103 Wash.2d at 712-13, 694 P.2d 1087 (citation omitted) (The court stated the purpose of the "use of other automobiles" clauses was "(1) to prevent an insured from receiving coverage on all household cars or another uninsured car of the insured by merely purchasing a single policy, and (2) to provide coverage to the insured when engaged in the infrequent use of nonowned vehicles." The court found the purpose of the provision was not met because the plaintiff was the only driver in the household and he drove the car at least four to six times per month. The court stated "Such use by [plaintiff] is not the sporadic, isolated incidence of driving of an noncovered car that was contemplated in the clause.").
[57] RCW 48.18.520: "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to and made a part of the policy."

RCW 48.18.190: "No agreement in conflict with, modifying, or extending any contract of insurance shall be valid unless in writing and made a part of the policy."
[58] Supplemental Brief of Petitioner at 8 (citing Mid-Century Ins. Co. v. Henault, 128 Wash.2d 207, 212, 905 P.2d 379 (1995)).
[59] See Mid-Century Ins. Co., 128 Wash.2d at 212, 905 P.2d 379; Smith v. Continental Casualty Co., 128 Wash.2d 73, 80-81 904 P.2d 749 (1995); Stonewall Ins. Co., 115 Wash.2d at 682, 801 P.2d 207.
[60] Supplemental Brief of Petitioner at 13 (citing see Morgan v. Prudential Ins. Co., 86 Wash.2d 432, 434-35, 545 P.2d 1193 (1976); Smith v. Continental Cas. Co., 128 Wash.2d 73, 82, 904 P.2d 749 (1995); Mid-Century Ins. Co. v. Henault, 128 Wash.2d 207, 213, 905 P.2d 379 (1995)).
[61] See Complaint for Declaratory and Injunctive Relief, Damages and Attorney's Fees and Costs, Spokane County Superior Court cause number XXXXXXXX-X, Clerk's Papers at 5; see also Answer to Complaint, Spokane County Superior Court cause number XX-X-XXXXX-X, Clerk's Papers at 12.
[62] Rule 18.1 provides for attorney fees and expenses in part as follows:

"(a) Generally. If applicable law grants to a party the right to recover reasonable attorney fees or expenses on review, the party must request the fees or expenses as provided in this rule....
"(b) Argument in Brief. The party must devote a section of the brief to the request for the fees or expenses...."
[63] See Petition for Review of State Farm Mutual Automobile Insurance Company; Supplemental Brief of Petitioner.
[64] See Findlay v. United Pacific Ins. Co., 129 Wash.2d 368, 380, 917 P.2d 116 (1996); see also McGreevy v. Oregon Mutual Ins. Co., 128 Wash.2d 26, 28, 904 P.2d 731 (1995).
[65] See Stonewall Ins. Co., 115 Wash.2d at 682, 801 P.2d 207.
[66] See Mid-Century Ins. Co., 128 Wash.2d at 213, 905 P.2d 379, (citation omitted).
[67] See Viking Ins. Co., 46 Wash.App. at 829, 733 P.2d 556; see also Phil Schroeder, Inc., 99 Wash.2d at 68, 659 P.2d 509, (citation omitted).
[68] See Wehinger, 182 Wash. at 367, 47 P.2d 35.
[69] See Oregon Mutual Ins. Co., 2 Wash.App. at 306-07, 469 P.2d 989.
[70] Grange Ins., 103 Wash.2d at 712, 694 P.2d 1087.
[71] See id.