[No. 7959-3-II.   Division Two.   November 3, 1986.]

FRANK KING, *Appellant,* v. WILLIAM J. BILSLAND, ET AL, *Respondents.*

*Joan F. Curry* and *Stewart, Thomas, Curry & Stewart,* for appellant.

*Rayburn K. Dudenbostel,* for respondents.

ALEXANDER, J.—Frank King appeals a judgment in favor of the Bilslands on his action for breach of a real estate contract. King contends that several of the trial court's findings of fact are not supported by substantial evidence, that the trial court erred in finding that the contract contained a contingency for the sale of the Bilslands' properties, and that the trial court erred in imputing the real estate agent's knowledge of the contingencies to Frank King. We reverse.

Frank King listed his residence in Elma, Washington, with the Ted Brower Real Estate agency. Caroline Wadsworth, a real estate agent for the agency, handled the listing. William and Stacia Bilsland became interested in acquiring King's residence. The Bilslands told Wadsworth that they had to sell their own two properties before they could purchase King's residence. Wadsworth prepared listings for the Bilslands' residence and for a rental property owned by them. The listings contained provisions that the sale of the Bilslands' properties were contingent on the Bilslands' ability to purchase King's residence.

In September 1981, the Bilslands offered to trade their two properties for King's residence, but King rejected the offer. In October of the same year, Craig and Laura Shafer entered into an agreement with the Bilslands for the purchase of the Bilslands' residence. That sale was contingent upon Bilslands' ability to purchase King's residence.

That same month, Mr. and Mrs. Moore entered into a "Real Estate Purchase and Sale Agreement" with the Bilslands. According to the agreement, the Moores agreed to rent the Bilslands' rental property for $350 per month, $50 of which would be credited to a $4,000 down payment in the event of its purchase. Wadsworth, who prepared the document, and the Bilslands considered this arrangement to be a lease with an option to purchase.

Wadsworth testified that, with the consummation of the Bilsland–Moore agreement, she thought that both of the Bilslands' properties had been "sold." She also said that she believed that the Bilslands thought both properties had been sold. William Bilsland said that he was "encouraged" by Wadsworth, but that he was worried that the lease-option arrangement might not develop into a sale.

On the same day that the Bilsland–Moore agreement was signed, the Bilslands made an offer to purchase King's residence. This offer was not accepted. Approximately 2 weeks later, the Bilslands made another offer to purchase King's residence, this time for a price of $87,000. King accepted the offer with some modifications on November 14, 1981.

The King–Bilsland contract, as executed, contained a paragraph entitled, "Contingencies," as follows:

This agreement is conditioned on _____ sale of Buyer's present home at _____ St., __X__ other Aberdeen Federal Savings & Loan continuing underlying mortgage @ 15% per annum on or before _____ 19___ (If either of the foregoing are [sic] checked, the contingency clause on the reverse side hereof is part of this agreement.)[1]

Shortly after the execution of the King–Bilsland contract the Moores notified the Bilslands that they had become unemployed and that they would be unable to purchase the Bilslands' rental house. The Bilslands then refused to close the sale with Frank King. King subsequently sold his resi-

---

[1]The underlined words were not part of the printed form contract, but were typed in by the parties.

dence to another buyer for $75,000 in a cash sale.

King brought suit against the Bilslands claiming a breach of the real estate contract and consequential damages.[2] The trial court concluded that the Bilslands' contractual obligation to purchase King's residence was contingent on the sale of their properties and granted judgment to the Bilslands. King appealed.

The pivotal issue on appeal is whether the trial court erred in concluding that the agreement contained, on its "face," this contingency.[3] King argues that the contract is unambiguous on its face and that the Bilslands' obligation was not contingent on the sale of their properties. We agree with King.

█ The determination whether a contract is ambiguous is a question of law, which the appellate court independently decides. *Beedle v. General Inv. Co.*, 2 Wn. App. 594, 598, 469 P.2d 233 (1970). Once the court determines that the parties to a contract intended a written agreement to be a complete integration of the agreement, parol evidence is not admissible unless the contract is ambiguous. *See Brust v. McDonald's Corp.*, 34 Wn. App. 199, 204–06, 660 P.2d 320 (1983). Parol evidence may be used to explain an ambiguity but not to change, alter, or vary the express terms of a written contract. *Hofmann Co. v. Meisner*, 17 Ariz. App. 263, 497 P.2d 83 (1972). The court cannot impose obligations between the parties that never existed. *Agnew v. Lacey Co–Ply*, 33 Wn. App. 283, 288, 654 P.2d 712 (1982), *review denied*, 99 Wn.2d 1006 (1983). When

---

[2]The court did not make a finding concerning damages. There was conflicting evidence presented about whether a $75,000 cash sale had a greater present value in actual dollars than an installment contract for $87,000.

[3]The court in its letter ruling, which was consistent with its written decision, said that the agreement was "clear and unambiguous" and that the "intent of the parties is to be garnered from its content." The appellate court can look at the trial court's tentative ruling to interpret the trial court's written findings when the trial court's tentative ruling is consistent with the written findings and conclusions. *See Bennett Veneer Factors, Inc. v. Brewer*, 73 Wn.2d 849, 853, 441 P.2d 128 (1968); *Malfait v. Malfait*, 54 Wn.2d 413, 416–17, 341 P.2d 154 (1959).

possible, the courts will determine what the parties intended by leaving a line blank by examining the rest of the document. *Hofmann v. Meisner,* 497 P.2d at 86.

Here, the meaning of the contract is clear and not subject to interpretation. The blank following the words "sale of the Buyer's present home at" in the contingency clause is not filled in and the box next to this blank is not checked. On the other hand, the box for "other" immediately under it is checked and the blank is filled in. In addition, the language that appears at the end of the "contingencies" clause, "If either of the foregoing are [*sic*] checked, the contingency clause on the reverse side hereof is part of this agreement," should have alerted the parties to the necessity to check the appropriate boxes. It seems obvious from this that the parties would know that in order to include a provision making the purchase contingent on a sale of the buyer's present home, they would have to check the box and fill in the blank with the address of the buyer's home. This the parties did not do. We conclude that the contract is unambiguous, and that the contract does not contain a provision that the purchase is contingent on the sale of the Bilslands' properties. Parol evidence is therefore inadmissible to explain the plain terms of the written contract.

King's other argument is that the following findings of fact were not supported by the evidence: (1) finding of fact 5, that the Bilslands refused to submit an offer to purchase King's residence until they had sold their own properties; (2) finding 9, that Wadsworth told the Bilslands that their properties had been sold; (3) finding of fact 12, that the Bilslands had told Wadsworth that they would only purchase King's residence if their two properties had been sold. In our judgment, these findings of fact were unnecessary to the trial court's decision, because the trial court found that the contract contained a contingency on the face of the agreement for the sale of the Bilslands' properties. These three findings of fact concern parol evidence of the

intent of the parties.[4] In view of the fact that we have concluded that the contract is unambiguous and that the contract does not contain a provision making the obligation contingent on the sale of the Bilslands' properties, evidence of a contrary intention of the parties is inadmissible and superfluous. We therefore need not review whether substantial evidence supports these findings of fact.

King also argues that the trial court erred as a matter of law in imputing Wadsworth's knowledge of the contingency to King. Again, this conclusion of law was unnecessary to the trial court's final decision because the evidence supporting it amounted to parol evidence of the intent of the parties. Because, as we have already noted, the intent of the parties is evident from the written contract, we decline to reach this issue.

King has requested an award of reasonable attorney's fees on appeal in the amount of $3,500, pursuant to the terms of paragraph 12 of the contract between King and the Bilslands. The Bilslands have also requested an award of attorney's fees and we deny their request.

We also decline to award King any attorney's fees at this time. On remand, however, the trial court may, in its discretion, award reasonable attorney's fees to King for this appeal. As noted earlier, the parties presented conflicting evidence on the question of whether or not King was damaged by the Bilslands' breach of the contract. It may be determined on remand that King is entitled to no damages, or only nominal damages. In such a circumstance, it would not be appropriate to penalize the Bilslands with an obligation to pay King's attorney's fees on appeal. Therefore, King's request for an award of attorney's fees will abide later determination by the trial court when the damage issue is resolved.

We reverse the decision of the trial court and remand the

---

[4]The trial court did not enter a conclusion of law about whether the parol evidence was admissible. At trial, the court let the parol evidence in conditionally, stating "Well, I will let it in for the time being and see where we are going."

case to the trial court for a determination of damages and attorney's fees, if any.

REED, A.C.J., and PETRICH, J., concur.