[No. 24104-8-II. Division Two. November 3, 2000.]

RICHARD E. MEHLENBACHER, ET AL., *Respondents*, v. JOHN L. DEMONT, ET AL., *Appellants*.

*Kelly A. DeLaat-Maher* and *Thomas L. Dickson* (of *Law Offices of Thomas L. Dickson*), for appellants.

*Jeffrey P. Helsdon* and *Justin D. Park* (of *McFerran & Helsdon, P.S.*), for respondents.

ARMSTRONG, C.J. — The DeMonts purchased unimproved property from the Mehlenbachers in 1994. The Mehlenbachers financed part of the purchase price with a promissory note secured by a deed of trust. When a neighbor sued the DeMonts for landslide damage, the DeMonts joined the Mehlenbachers, alleging that they had misrepresented the property's stability. The Mehlenbachers counterclaimed to foreclose the deed of trust and then moved successfully for summary judgment on the misrepresentation claim. Several months later, the trial court severed the Mehlenbachers' foreclosure claim from the other litigation. The Mehlenbachers started a separate action to foreclose, which resulted in a decree of foreclosure and judgment in favor of the Mehlenbachers for the balance due, $18,715 in interest and $20,000 in attorney fees, which included some of the work done defending the misrepresentation claim. On appeal, the DeMonts argue that the Mehlenbachers waived any claim for attorney fees in the misrepresentation claim by not asserting it in that action. The DeMonts also argue that the award of fees and costs was excessive and that under the terms of the contracts, the Mehlenbachers were not entitled to interest. The Mehlenbachers cross appeal, arguing that the trial court reduced their requested fee without using the lodestar method. We hold that the Mehlenbachers are entitled to fees and costs for defending the misrepresentation work but only to the extent necessary to obtain the foreclosure judgment. We remand to the trial court to make such determination. Further, the trial court must reconsider its award of attorney fees based on the lodestar method. We vacate the judgment for fees and costs and remand to the trial court to reconsider the amount of fees and costs. We find no error in the court's prejudgment interest award.

## FACTS

In 1994, John, Jo, and Joel DeMont purchased unimproved property on Fox Island from Richard and Karen Mehlenbacher. The DeMonts paid $100,000 and gave the Mehlenbachers a promissory note for the balance of $44,000. The note was secured by a deed of trust.[1] Before the DeMonts finished constructing a house on the property, a landslide damaged the house and, apparently, the neighbor's property.

In 1996, the adjoining landowners, Johnny and Sarolye Reeder, sued the DeMonts and Pierce County, claiming the DeMonts and Pierce County's negligence damaged their home (the Reeder action). The DeMonts answered and named the Mehlenbachers as third-party defendants, claiming they misrepresented the condition of the land when they sold it and withheld the geotechnical reports about the hazards of surface water runoff. The Mehlenbachers joined other parties and counterclaimed to foreclose the deed of trust. The trial court granted summary judgment to the Mehlenbachers on the DeMonts' misrepresentation action.

A few months later, the trial court severed the Mehlenbachers' foreclosure claim from the remaining claims in the Reeder action. The Mehlenbachers refiled their claim under a new cause number and eventually prevailed against the DeMonts' affirmative defenses. The trial court then awarded the Mehlenbachers attorney fees and costs in the foreclosure action. This included fees for some of the work done in the Reeder action for defending

---

[1] The deed of trust provided, in part:

To protect the security of this Deed of Trust, Grantor covenants and agrees:

. . .

4. To defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses, including cost of title search and attorney's fees in a reasonable amount, in any such action or proceeding, and in any suit brought by Beneficiary to foreclose this Deed of Trust.

the misrepresentation claim. The trial court entered a judgment and decree of foreclosure granting the Mehlenbachers $44,000 in principal, $18,715 in post-default interest, and $20,000 in attorney fees and costs. The DeMonts appeal the award of attorney fees and costs and the award of interest; the Mehlenbachers cross appeal on the amount of fees and costs awarded.

ANALYSIS

I. Attorney Fees

A. Standard of Review

 Washington follows the American rule that attorney fees are recoverable in a suit only when authorized by statute, contract, or equity. *Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 280, 876 P.2d 896 (1994). A trial court's decision to award fees and costs is a question of law and reviewed to determine if the relevant statute or contract provides for an award of fees. *Tradewell Group, Inc. v. Mavis*, 71 Wn. App. 120, 126, 857 P.2d 1053 (1993).

An award of attorney fees based on a contractual provision is appropriate when the action arose out of the contract and the contract is central to the dispute. *Seattle-First Nat'l Bank v. Wash. Ins. Guar. Ass'n*, 116 Wn.2d 398, 413, 804 P.2d 1263 (1991). In an action to enforce or defend a contract that includes an attorney fee provision, the prevailing party may recover attorney fees and costs under RCW 4.84.330. *See Seattle-First Nat'l Bank v. Siebol*, 64 Wn. App. 401, 409, 824 P.2d 1252 (1992).

B. Trial Court Award

The DeMonts argue that the trial court erred by allowing the Mehlenbachers to recover fees and costs from the Reeder action and not just the subsequent foreclosure action. The Mehlenbachers, according to the DeMonts, waived any right to attorney fees and costs from the Reeder action because they did not ask for them at the time of summary judgment or in a postjudgment cost bill. Further,

the DeMonts argue, once the foreclosure action was severed from the Reeder action, any judgments or attorney fees should also be separate. Finally, the DeMonts contend that the trial court erred in not calculating the fee awards according to the lodestar formula.

We first consider whether the order severing the foreclosure action bars any recovery for work done in the Reeder action. CR 21 governs the misjoinder and nonjoinder of parties and provides:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Here, the trial court found that the Mehlenbachers' claims arose from different transactions and occurrences than the Reeders' claims, that there were no common issues of law or fact, and that the Mehlenbachers would be prejudiced unless the claims were severed. Thus, the court ordered "[t]he claim asserted against DeMonts by the Mehlenbachers be severed from the claims asserted in the rest of the litigation and that the Mehlenbachers file a separate action to proceed with the severed claim."

■ Under CR 21, however, an order of severance preserves the identity of an action, unlike an order dropping a party, which is equivalent to a dismissal of the claim without prejudice. *See* 15A Karl B. Tegland & Douglas J. Ende, Washington Practice, Washington Handbook on Civil Procedure § 23.4, at 193 (2000). And a severed action is, at least in some ways, a continuation of the original action. *See Elmore v. Henderson*, 227 F.3d 1009 (7th Cir. 2000). Thus, the statute of limitations does not bar a severed action if it was timely filed in the original action. *See* Tegland & Ende, *supra*; *Elmore*, 227 F.3d 1009. We conclude that the order severing the foreclosure action does not bar the Mehlenbachers from an award of attorney fees for work done in the Reeder action.

But the DeMonts argue that the Mehlenbachers waived any claim for fees and expenses related to the misrepresentation claim by not requesting fees in the Reeder action either at the time of the summary judgment or when a final order was entered in the Reeder action. We disagree.

CR 54(b) allows the trial court to enter a final appealable order when there are remaining unresolved issues, but it does not require it to do so.[2] Absent such an action, a matter is not final until all remaining issues between all remaining parties are resolved. No CR 54(b) order was entered in the Reeder action. Hence, any fees and costs stemming from the misrepresentation claim could be recovered only once a final judgment was entered in the Reeder action. But the Mehlenbachers were no longer parties in the Reeder action after their motion for summary judgment was granted. And the foreclosure action was not completed until after it was severed. Thus, if the Mehlenbachers were required to seek an award of fees and costs in the Reeder action at the time of the summary judgment, the award would have been partial. More importantly, the award would have been premature. Under the deed of trust, the Mehlenbachers are entitled to attorney fees only if successful in their foreclosure action. When the Mehlenbachers filed the new action, the DeMonts raised a number of affirmative defenses. Until there was a final judgment in the foreclosure action, it was

---

[2] CR 54 (b) states:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination in the judgment, supported by written findings, that there is no just reason for delay and upon an express direction for the entry of judgment. The findings may be made at the time of entry of judgment or thereafter on the court's own motion or on motion of any party. In the absence of such findings, determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

not certain that the Mehlenbachers would prevail and be entitled to attorney fees. Thus, the Mehlenbachers could claim their entire fees, even those incurred in defense of the misrepresentation claim, only in the foreclosure action. This is also consistent with treating the severed action as a continuation of the original action.

Nevertheless, the Mehlenbachers can recover only those fees and costs in the misrepresentation claim that are "inextricably intertwined" with their foreclosure claim. *CKP, Inc. v. GRS Constr. Co.*, 63 Wn. App. 601, 621, 821 P.2d 63 (1991). In *CKP*, the subcontractor sued to foreclose a materialman's lien and GRS, the prime contractor, counterclaimed for damages. All claims were tried together. CKP prevailed and was awarded attorney fees under former RCW 60.04.130 (1975), which entitled the prevailing party to attorney fees from trial and on appeal in a lien foreclosure action, and under a contractual provision allowing for attorney fees to a prevailing party. *CKP*, 63 Wn. App. at 621. The attorney fees included fees for defending the counterclaims. On appeal, the court held that "the defense of the counterclaims was inextricably intertwined with CKP's establishment of its lien rights. Thus, CKP was properly allowed fees incurred in the defense of counterclaims." *CKP*, 63 Wn. App. at 621.

Here, the DeMonts did not seek to rescind the property purchase based upon misrepresentation. Rather, they sought damages for misrepresentation. Thus, it is at least conceivable that both the foreclosure and misrepresentation actions could have proceeded independently with each party obtaining a judgment against the other. If so, the actions were not inextricably intertwined so that the foreclosure action could not proceed until resolution of the misrepresentation claim. The record is insufficient for us to make this judgment. Accordingly, we remand for the trial court to determine the extent to which the actions were intertwined. To the extent they were, the Mehlenbachers can recover reasonable attorney fees for defending the misrepresentation claim. *CKP*, 63 Wn. App. at 621.

## II. Calculation of Fees

■■ The parties agree that the trial court should have, and failed to, compute the award using the lodestar method. Washington has adopted the lodestar method for determining the amount of an award for fees and costs. The lodestar approach involves two steps. First, the award is determined by "multiplying a *reasonable* hourly rate by the number of hours *reasonably* expended on the matter." *Scott Fetzer Co. v. Weeks*, 122 Wn.2d 141, 149-50, 859 P.2d 1210 (1993); *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 597, 675 P.2d 193 (1983). Second, the award is adjusted "either upward or downward to reflect factors not already taken into consideration." *Ross v. State Farm Mut. Auto. Ins. Co.*, 82 Wn. App. 787, 800, 919 P.2d 1268 (1996), *reversed on other grounds*, 132 Wn.2d 507 (1997); *see also Bowers*, 100 Wn.2d at 598-99.

Here, the Mehlenbachers submitted their attorney's declaration, detailing the hours worked, the type of work performed, the category of the attorney who performed the work, and the fees for non-lawyer services. Based upon this declaration, they calculated $25,938 for attorney fees and $6,625 for costs and advances. From this, the Mehlenbachers deducted any amounts for work on the Mehlenbachers' claims against all other parties in the suit. The final amount in fees and costs they sought was $27,912.

According to the Mehlenbachers, there is no basis for the trial court's award of $20,000 for fees and costs. At best, they argue, it "is a round number and a number shockingly close to the median between the parties' two original figures: $19,454."[3]

In applying the lodestar method, the trial court's discretion is limited to examining the "contingent nature of success, and the quality of work performed." *Bowers*, 100 Wn.2d at 598. Here, there was no contingency agreement and, thus, the trial court's discretion was limited to assess-

---

[3] The Mehlenbachers sought $32,562 and the DeMonts claimed that $6,345 was the correct amount.

ing the quality of the work performed. This factor, however, has limited applicability because the quality of the work is reflected in the reasonable hourly rate. *Bowers,* 100 Wn.2d at 599. The trial court may, however, reduce the number of allowable hours for "duplicat[ive] work or other unproductive time." *Bowers,* 100 Wn.2d at 601.

■ When its order is substantially less than requested, the trial court must provide some explanation of how it computed the award and why the amount is less than requested. *Absher Constr. Co. v. Kent Sch. Dist. No. 415,* 79 Wn. App. 841, 848, 905 P.2d 1229 (1995). Here, the trial court discounted the requested award by approximately $8,000.[4] Yet the record does not show how the court computed the costs award. Neither the judgment, the hearing transcript, nor the letter from the trial court describing its intended judgment discuss how the number was calculated.[5]

On remand, the trial court must recalculate the fees and costs award. Under *Absher,* if the trial court substantially deviates from the amount requested by the Mehlenbachers, it must explain on the record how the amount was calculated.

### III. Prejudgment Interest

The DeMonts argue that the trial court erred in awarding prejudgment interest on the promissory note because the terms of the note required zero percent interest. Citing *King v. Bilsland,* 45 Wn. App. 797, 727 P.2d 694 (1986), the DeMonts argue that the court may not fill in the blank line of the promissory note.[6] The DeMonts further argue that absent any express language in the promissory note, the

---

[4] Although case law does not define "substantially less," presumably an award that is almost one third less than requested qualifies as substantially less.

[5] The trial court mailed a letter to counsel stating, without explaining, that "I have determined that the Attorney Fees and Costs will be $20,000."

[6] *King,* however, does not address the prejudgment interest rate, which is at issue in this case.

interest rate after maturity should be the same as the interest rate before maturity. Moreover, the DeMonts argue that the Real Estate Purchase and Sale Agreement (REPSA) precludes any default interest rate.[7]

The promissory note, dated July 22, 1994, provided that the DeMonts promised to pay:

> [T]he sum of FORTY FOUR THOUSAND AND NO ONE/100 DOLLARS with interest thereon at the rate of 0 per cent, per annum from date hereof; payable as follows:
>
> $44,000.00 DUE ON SALE OF NEW HOME CONSTRUC-TION OR DUE AND PAYABLE ON APRIL 14, 1995.
>
> THIS IS NON-INTEREST BEARING NOTE
>
> THIS NOTE IS SECURED BY A DEED OF TRUST
>
> If any of said installments are not so paid, the whole sum of both principal and interest shall become due and payable at once without further notice, at the option of the holder hereof.
>
> This note shall bear interest at the rate of _____ per cent, per annum after maturity or after failure to pay any installment as above specified, and if this note shall be placed in the hands of an attorney for collection, or if suit shall be brought to collect any of the principal or interest of this note I promise to pay a reasonable attorney's fee.
>
> Each maker of this note executes the same as a principal and not as a surety.

■ We review an award of prejudgment interest for an abuse of discretion. *Curtis v. Sec. Bank*, 69 Wn. App. 12, 20, 847 P.2d 507 (1993). "[A] trial court abuses its discretion

---

[7] The parties do not agree on whether the trial court erred by not considering the REPSA. The DeMonts argue that the REPSA provides extrinsic evidence that the parties intended a zero percent interest rate because the box before "Default Rate of——%" was not checked off. The trial court, continues the DeMonts, may consider the REPSA because it did not merge into the promissory note or deed of trust; the DeMonts' obligations were not satisfied upon execution and delivery of the deed, rather there were continuing obligations. And relying on *Berg v. Hudesman*, 115 Wn.2d 657, 801 P.2d 222 (1990), the DeMonts argue that because the REPSA was a contemporaneous document to the note, it can be used to establish the meaning of the contract, even if it was not integrated. The Mehlenbachers, however, contend that the trial court properly refused to consider the REPSA because it merged into the note and deed of trust. We do not need to reach the issue of merger because the imposition of prejudgment interest in this case is determined by RCW 19.52.010.

when its decision is arbitrary, manifestly unreasonable, or based upon untenable grounds." *Atwood v. Shanks*, 91 Wn. App. 404, 409, 958 P.2d 332, *review denied*, 136 Wn.2d 1029 (1998) (citing *State ex. rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

Absent a written agreement regarding interest, RCW 19.52.010 imposes a statutory interest rate. Specifically, RCW 19.52.010 states: "(1) Every loan or forbearance of money, goods, or thing in action shall bear interest at the rate of twelve percent per annum where no different rate is agreed to in writing between the parties."

Here, the note does not contain a written term for a default interest rate. The trial court imposed the statutory rate of 12 percent interest per annum to the note. We find no abuse of discretion.

The two cases the DeMonts relied upon do not support their position that the interest rate should be zero. *Petroscience Corp. v. Diamond Geophysical, Inc.*, 684 S.W.2d 668 (Tex. 1984), held that when a note contains a prematurity interest rate but not a postmaturity rate, the prematurity rate is implied to be the postmaturity rate. *Petroscience*, however, interprets Texas statutes, not Washington statutes. *Peoples Nat'l Bank v. Nat'l Bank of Commerce*, 69 Wn.2d 682, 420 P.2d 208 (1966), held that when parties executed multiple promissory notes, some with and some without default interest rates, the court could imply that the parties intended the statutory rate of interest to apply to those notes not specifying a rate. The DeMonts distinguish *People's National Bank* as it involved multiple promissory notes, not just one. But the *People's National Bank* court applied the statutory interest rate to notes containing no stated rate of interest on default. And that is precisely what the trial court did here.

We affirm the award of 12 percent interest after default on the note.

### IV. Attorney Fees on Appeal

As the substantially prevailing party, the Mehlenbachers, pursuant to the deed of trust, are entitled to attorney fees and costs on appeal as provided in the deed of trust.

We affirm the award of interest. But we vacate the judgment for attorney fees and costs and remand for a determination of fees and costs.

BRIDGEWATER and HUNT, JJ., concur.

Motions for reconsideration denied January 17, 2001.