IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re the Marriage of: | No. 87370-9-I |
| LINGJUN STEVE HOU, | DIVISION ONE |
| Respondent, | |
| and | UNPUBLISHED OPINION |
| JIE YAO HOU, | |
| Appellant. | |

SMITH, J. — An arbitrator directed Jie Hou to prepare a qualified domestic relations order (QDRO) splitting her Public Employees' Retirement System Plan 2 (PERS 2) account with her ex-spouse, Steve Hou. In this appeal, Jie[1] challenges the trial court's orders confirming the arbitrator's award, denying Jie's motion to vacate the award, entering a QDRO pursuant to the award, and awarding attorney fees to Steve. She also challenges the trial court's denial of her motion to revise a commissioner's order that denied reconsideration of fees awarded to Steve in a contempt proceeding. We affirm.

FACTS

In December 2022, the trial court entered a final dissolution decree dissolving the parties' marriage. The decree incorporated a separation contract that the parties executed under Civil Rule (CR) 2A in September 2022 (CR 2A

---

[1] The parties share a last name, so for clarity, we refer to them by the names they used in their declarations and correspondence below.

agreement). The CR 2A agreement provided, with regard to the parties' respective pensions,

> 4. Pensions: The community interest in Husband's City of Seattle Pension shall be awarded 50% to husband and 50% to wife. Husband shall pay the cost of preparing a QDRO to effectuate this award.
>
> 5. The community interest in Wife's PERS II Pension shall be awarded 50% to wife and 50% to husband. Wife shall pay the cost of preparing a QDRO to effectuate this award.

The CR 2A Agreement also provided, "Each party agrees and stipulates that all disputes in reducing this agreement to orders suitable for entry with the court, including resolution of any issues inadvertently omitted from the agreement but necessary to final disposition of this matter, shall be subject to binding arbitration" under the uniform arbitration act (UAA), RCW chapter 7.04A.[2]

The dissolution court also entered a child support order stating, among other things, that "[b]eginning 10/1/2022, [Steve] agrees to provide [the parties' daughter] with $700.00 per month for living expenses and share [certain] expenses so long as she is enrolled in her undergraduate program."

In June 2023, Steve moved to compel arbitration, alleging that although he had complied with his obligation to prepare a QDRO to effectuate the CR 2A agreement as it applied to his pension, Jie was refusing to prepare a QDRO for her PERS 2 pension. On August 2, 2023, an arbitrator issued an award directing Jie "to prepare an approved [QDRO] for her Washington State PERS II pension,

---

[2] The CR 2A agreement refers to RCW chapter 7.04, which was repealed when Washington adopted the revised UAA. *See* LAWS OF 2005, ch. 433, § 50. It is undisputed that RCW chapter 7.04A applies, and both parties rely on it in their briefs.

present it to [Steve] for signature and submit it to the pension administrator for review no later than August 31, 2023."

In December 2023, Steve again moved to compel arbitration. He argued that because Jie was vested in her PERS 2 pension, she was required to prepare a QDRO that split her PERS 2 account into two separate accounts under WAC 415-02-520 (split-type QDRO), rather than one that merely gave Steve an interest in her account under WAC 415-02-510 (interest-type QDRO). Steve pointed out that under an interest-type QDRO, he would not receive any payments from Jie's pension until Jie terminated her employment or retired, and if Jie terminated her employment, he would not receive any payments until Jie withdrew her accumulated contributions. *See* WAC 415-02-510(2)(b)(i)-(ii). Therefore, Steve asserted, he would "receive nothing until [Jie] decides to retire and until she decides to take a distribution of the proceeds of her pension," and because Jie was four years younger than Steve, he would "be forced to wait until at least he is 69 before receiving any benefit." He also asserted that under WAC 415-02-510(2)(c)(iii), he would stop receiving payments if Jie died before he did. By contrast, under a split-type QDRO, Steve could begin receiving payments once *he* reached retirement age, *see* WAC 415-02-520(3)(i), and "[w]hen [Jie] or [Steve] dies, there will be no impact to the other person's retirement account because the accounts are independent from one another." WAC 415-02-520(3)(h). Steve represented that Jie was insisting on an interest-type QDRO, and he requested that the matter be submitted to binding arbitration.

3

The trial court determined that "this is a dispute that clearly falls within the broad language of the binding arbitration clause of the CR2A Agreement" and granted Steve's motion to compel arbitration. On April 22, 2024, the arbitrator issued their award. They explained that "[e]xcept for the requirement that QDRO's be prepared, the manner in which [the community interest in each pension] will be distributed is not stated in the [CR 2A agreement] and is the subject of this arbitration." After discussing the parties' arguments about an interest-type versus a split-type QDRO, the arbitrator concluded,

> If [Jie]'s 'interest' QDRO were entered, she would continue to have authority to determine when or if [Steve] would receive his now separate interest in her PERS II pension. He would be left with the specter of continued litigation to secure his property right if his fears are realized and Ms. Hou elects not to collect her pension during his lifetime. The law prefers finality and the way to achieve that in this situation is to enter an order under WAC's 415-02-500 and 415-02-520 splitting Ms. Hou's PERS II pension into two accounts.

The arbitrator directed Jie to prepare a split-type QDRO for Steve's review "no later than May 10, 2024." They also ordered that if Jie failed to timely prepare a split-type QDRO, Steve "may prepare the order and [Jie] shall be obligated to pay any attorney fees that [Steve] incurs for drafting, preparation and entry of the order."

On May 17, 2024, Steve moved to confirm the arbitration award and for attorney fees. He asserted that Jie had refused to obey the arbitrator's order, and he requested that the trial court direct her to comply. Jie, for her part, moved to vacate the arbitration award. She argued among other things that by stating

4

that "the community *interest*[3] in her PERS 2 pension would be awarded 50 percent to Steve, the CR 2A agreement contemplated that Steve would receive only an *interest* in her PERS 2 pension and was not entitled to a split-type QDRO giving him a separate account.

On August 12, 2024, the trial court granted Steve's motion to confirm the arbitration award, denied Jie's motion to vacate it, and awarded Steve $2,500 in attorney fees. The court ordered Jie to comply with the award within seven days, and "[i]f [Jie] fails to comply with this order within 7 days, [Steve] may draft a QDRO that is compliant with the arbitration award and submit it to the court for signature along with an additional request for attorney fees for the costs of drafting and presenting the QDRO."

On August 29, 2024, Steve moved for an award of attorney fees. He represented that after the trial court confirmed the arbitration award, Jie "took no action whatsoever," so on August 22, Steve, through counsel, prepared a QDRO and sent it to the Washington Department of Retirement Systems (DRS) for preliminary review. Steve submitted copies of correspondence showing that Jie objected to DRS's approval of Steve's proposed QDRO, telling DRS that Steve "[d]oes [n]ot have the authority to create a Proposed Order dividing my retirement account using the 'split account' option."[4] DRS approved Steve's proposed QDRO,[5] which Steve then submitted to the trial court for signature and filing.

---

[3] Emphasis added.

[4] Bold face omitted.

[5] According to an e-mail from the DRS retirement specialist who reviewed the proposed QDRO, "DRS does not make a determination on whether a court

5

Jie opposed Steve's motion for an award of fees. She asserted that Steve's proposed split-type QDRO was "void," again arguing that the reference to "interest" in the pension provisions of the CR 2A agreement meant that she was required to prepare an interest-type QDRO and not a split-type QDRO. She also argued that because the CR 2A agreement stated that "[n]either party shall pay any attorney fees or costs to or for the benefit of the party," she could not be ordered to pay Steve's attorney fees.

On September 23, 2024, the trial court entered an order awarding Steve $1,338.50 in attorney fees incurred in connection with preparing the QDRO. It also entered Steve's proposed QDRO. Jie timely appealed from these orders as well as the trial court's earlier order confirming the arbitration award and denying Jie's motion to vacate it.

Meanwhile, in July 2024, Jie moved for an order holding Steve in contempt for failing to pay postsecondary educational support for the parties' daughter. A commissioner denied the motion, reasoning that "per RCW 26.19.090(4) the child is required to make her academic records available to [Steve]," and "[h]er refusal to do so is a basis for [Steve] to suspend payment." The commissioner also ordered Jie to pay $787.50 in attorney fees, reasoning that "[t]he CR 2A agreement did not prospectively bar [Steve] from seeking fees for matters beyond the scope of the [agreement]."

---

order should or should not be applied to a DRS retirement account" but would review it "for compliance with the rules and regulations regarding the division of a state retirement account."

Jie moved for reconsideration of the commissioner's fee award, arguing that because "[t]he Attorney Fees and Costs clause in [the CR 2A agreement] states: 'Neither party shall pay any attorney fees or costs to or for the benefit of the other party,' " Steve was responsible for paying his own attorney fees and costs. The commissioner denied reconsideration, explaining,

> The CR 2A Agreement signed by the parties in 2022 was binding as to the issues addressed in the agreement including post-secondary education (which was incorporated into a court order). The CR2A & final orders provide that each party will pay their own attorney fees. Nothing in the CR2A or the final orders supports [Jie]'s position that the court is somehow barred from awarding fees incurred by a party post-decree associated with litigation that was not part of the CR2A. Post-secondary support was part of the CR2A & final orders. The issue of contempt and/or enforcement is, however, distinct and, in this case, the fees awarded were authorized by statute.

Jie moved to revise the commissioner's order denying reconsideration, and a superior court judge denied revision. Jie then filed another notice of appeal designating the order denying revision.

DISCUSSION

*Confirmation of Arbitration Award*

Jie claims that the trial court erred by confirming the arbitration award and denying her motion to vacate it. We disagree.

We review de novo a trial court's decision to confirm or vacate an arbitration award. *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1311 (9th Cir. 2004); *see also Salewski v. Pilchuck Veterinary Hosp., Inc., P.S.*, 189 Wn. App. 898, 903, 359 P.3d 884 (2015) (on review, appellate court applies "the same standard applicable in the court which confirmed, vacated, modified or

7

corrected th[e arbitration] award"). Washington law strongly favors the finality of arbitration awards, and "judicial review of an arbitration award in the context of a proceeding . . . to confirm an arbitrator's award is exceedingly limited." *Davidson v. Hensen*, 135 Wn.2d 112, 118-19, 954 P.2d 1327 (1998). Judicial review of an arbitration award "does not include a review of the merits of the case," and the evidence before the arbitrator ordinarily will not be considered by the court. *Davidson,* at 119. Instead, review " 'is confined to the question of whether any of the statutory grounds for vacation exist.' " *Salewski*, 189 Wn. App. at 903-04 (quoting *Cummings v. Budget Tank Removal & Env't Servs., LLC*, 163 Wn. App. 379, 388, 260 P.3d 220 (2011)). As relevant here, the court "shall" confirm the arbitrator's award unless (1) the arbitrator "exceeded the arbitrator's powers" or (2) the arbitrator "refused to consider evidence material to the controversy . . . so as to prejudice substantially the rights of a party to the arbitration proceeding." RCW 7.04A.220; RCW 7.04A.230(1), (4). As the party seeking to vacate the award, Jie bears the burden to show that such grounds exist. *Salewski*, 189 Wn. App. at 904.

Jie does not meet this burden. She first contends that the arbitrator exceeded their powers. "To vacate an award on this ground, the error must appear 'on the face of the award,' " such as, for example, where an arbitrator identifies a portion of the award as punitive damages in a jurisdiction that does not allow punitive damages. *Salewski*, 189 Wn. App. at 904 (quoting *Federated Servs. Ins. Co. v. Pers. Representative of Estate of Norberg*, 101 Wn. App. 119, 123, 4 P.3d 844 (2000)).

Jie makes a number of arguments to support her contention that the arbitrator exceeded their powers. She contends that the arbitrator decided an issue that was not before them, failed to render a final and definite award, and committed significant legal errors. But at bottom, all of her arguments are premised on her claim that by referring to the "community *interest*"[6] in the parties' respective pensions, the CR 2A agreement—and the final dissolution decree that incorporated it—mandated that the parties enter into *interest*-type QDROs to effectuate the pension-related clauses of the agreement.[7] The arbitrator rejected this argument, explaining that "[t]he word 'interest' in these clauses refers to the property being divided and not to the manner in which it is to be divided." Jie obviously disagrees with the arbitrator's interpretation of the CR 2A agreement, and her arguments on appeal essentially ask this court to reexamine the agreement and reach a different conclusion than the arbitrator did. But because our review does not encompass the merits of the arbitrator's decision, we decline to do so.

Jie next contends that the arbitrator refused to consider evidence material to the controversy and that when she raised this alleged refusal in her motion to

---

[6] Emphasis added.

[7] For example, Jie asserts that "[b]oth the husband and the wife have agreed, without dispute, that each party should enter an 'interest' type QDRO as mandated by the decree of dissolution"; the only issue that should have been considered by the arbitrator was "whether WAC 415-02-520 should be used . . . for the wife's PERS 2 'interest' type QDRO"; "[t]he decree of dissolution includes mirrored pension division terms that specifically require the husband and wife each to prepare and enter the same 'interest' type QDRO"; and she is at risk of being held in contempt based on the conflict between the arbitration award and the dissolution decree, which the arbitrator was without authority to overrule.

9

vacate the arbitrator's award, the trial court failed to consider it, thus depriving Jie

of due process.  Jie does not specify what evidence the arbitrator failed to

consider; but she described it below as "the parties' CR2A agreement, the

pension division law WAC 415-02-500 and her original interest type PERS 2

QDRO," which Jie asserted "prove[d] that [she] . . . did follow the direction of

WAC 415-02-500 and the CR2A agreement by using [an interest-type QDRO] to

divide her pension."

But this evidence was not "material" to the controversy because the issue

before the arbitrator was the *manner* in which the parties' community interest in

Jie's pension should be divided (i.e., using an interest-type QDRO or a split-type

QDRO), not whether Jie's proposed interest-type QDRO complied with the

WACs.  Furthermore, Jie does not point to anything in the record to show that the

trial court did not consider her argument that the arbitrator refused to consider

material evidence.  To the contrary, the trial court expressly acknowledged in its

order confirming the arbitration award that Jie alleged the arbitrator "failed to

consider evidence."  Jie's contentions fail, and she does not establish that the

trial court erred by confirming the arbitration award.

*Entry of QDRO*

Jie next asserts that the QDRO was procured by fraud and that it is void,

and she points out that a court may vacate a judgment obtained by fraud, as well

as a void judgment, at any time under CR 60(b)(4) and (5).  But Jie did not file a

CR 60(b) motion below, and in any case, she does not establish a basis to vacate the QDRO.[8]

According to Jie, the arbitration award states, " '[The husband] may prepare the ['split' type QDRO] and . . . [The wife] shall . . . sign [the] order . . . so it can be submitted to the court.' "[9]  Therefore, Jie asserts, Steve was required to obtain her signature on the QDRO before he could submit it to the court, and because the trial court did not require him to do so and instead entered the QDRO without her signature, the QDRO is void.

Jie at best misunderstands—and at worst, misrepresents—the language in the arbitration award.  *In full*, it states,

> [Jie] shall prepare a qualifying "split" [QDRO] pursuant to WAC 415-02-520 for [Steve]'s review no later than May 10, 2024.  If she fails to timely provide an order, [Steve] may prepare the order and [Jie] shall be obligated to pay any attorney fees that [Steve] incurs for drafting, preparation and entry of the order.  [*Jie*] *shall have no more than ten business days to sign an order once it is approved by* [*Steve*] so it can be submitted to the court.[10]

In other words, Jie's signature was not a *condition* to submission of the QDRO but rather an *obligation* she was required to fulfill.  The trial court did not err by authorizing Steve to present a QDRO without Jie's signature, or entering that QDRO without Jie's signature, after Jie did not timely fulfill that obligation.

---

[8]  We exercise our discretion to reach Jie's arguments in favor of vacating the QDRO even though she raises them for the first time on appeal.  *Cf.* RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court.").

[9] Bold face omitted.

[10]  Emphasis added.

Jie also asserts that the QDRO was procured by fraud because Steve's counsel submitted it to the court without an accompanying motion; "intentionally made a false statement that 'This Order is entered pursuant to the decree of dissolution' [when i]n reality, it directly contradicted the 'interest' type QDRO explicitly mandated by the decree of dissolution"; and "improperly submitted the void 'split' type QDRO to [DRS]." But the trial court's order confirming the arbitration award expressly authorized Steve to submit an split-type QDRO to the court for signature if Jie failed to do so within seven days; Jie's claim that the CR 2A agreement and resulting dissolution decree mandated an interest-type QDRO is, as discussed, not within the scope of our review; and Jie cites no authority for the proposition that Steve acted "improperly" by submitting his proposed QDRO to DRS for approval.

Finally, Jie maintains that the superior court deprived her of due process by allowing Steve to submit the split-type QDRO without a motion and, thus, the trial court lacked subject matter jurisdiction to enter it, and it is void. This argument is without merit. Jie had notice and an opportunity to be heard when Steve moved to confirm the arbitration award that directed Jie to prepare an split-type QDRO, and the record reflects that Steve provided her a copy of his proposed QDRO when he submitted it to DRS for review. Jie fails to show that additional process was required under the circumstances. *Cf. In re Detention of Lough*, 27 Wn. App. 2d 717, 533 P.3d 1184 (2023), *review denied*, 2 Wn.3d 1013 (2024) (in determining procedural due process protections, courts balance " '(1) the private interest affected; (2) the risk of erroneous deprivation of that

interest through existing procedures and the probable value, if any, of additional procedural safeguards; and (3) the governmental interest, including costs and administrative burdens of additional procedures.' " (quoting *In re Detention of Stout*, 159 Wn.2d 357, 370, 150 P.3d 86 (2007))).

*QDRO-Related Fee Awards*

Jie next asserts that we must vacate the fee awards entered in connection with confirming the arbitration award and entry of the QDRO. We disagree.

"Washington follows the American rule that attorney fees are recoverable in a suit only when authorized by statute, contract, or equity." *Mehlenbacher v. DeMont*, 103 Wn. App. 240, 244, 11 P.3d 871 (2000). When reviewing an award of attorney fees, we generally ask first whether the prevailing party was entitled to fees, and second, whether the award of fees was reasonable. *Pub. Util. Dist. No. 1 of Klickitat County v. Int'l Ins. Co.*, 124 Wn.2d 789, 814, 881 P.2d 1020 (1994). Here, Jie challenges only Steve's entitlement to fees. To that end, the UAA provides that "[o]n application of a prevailing party to a contested judicial proceeding [to confirm, vacate, modify, or correct an arbitration award], the court may add to a judgment . . . attorneys' fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made." RCW 7.04A.250(3).

"[W]e review a discretionary decision to award or deny attorney fees . . . for an abuse of discretion." *Gander v. Yeager*, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012). A trial court abuses its discretion when its decision is " 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' " *In*

*re Receivership of Applied Restoration, Inc.*, 28 Wn. App. 2d 881, 891, 539 P.3d 837 (2023) (internal quotation marks omitted) (quoting *MONY Life Ins. Co. v. Cissne Fam., LLC*, 135 Wn. App. 948, 952-53, 148 P.3d 1065 (2006)), *review denied*, 3 Wn.3d 1012 (2024). A trial court also abuses its discretion when its decision is based on an error of law. *King v. Olympic Pipeline Co.*, 104 Wn. App. 338, 355, 16 P.3d 45 (2000).

Jie contends that Steve was not entitled to fees because "[b]oth parties expressly agreed and stipulated in the CR 2A agreement that 'Neither party shall pay any attorney fees or costs to or for the benefit of the other party.' " She asserts that "[b]y signing this agreement, the parties waived their rights to seek attorney fees and costs." Absent disputed material facts, whether a party contractually waived a statutory right is a question of law that we review de novo. *In re Estate of Petelle*, 195 Wn.2d 661, 665, 462 P.3d 848 (2020).

Jie relies on *Hitter v. Bellevue School District No. 405*, 66 Wn. App. 391, 832 P.2d 130 (1992), to claim that Steve waived any right to request fees under the UAA. But *Hitter* is distinguishable. There, we held that a person who prevails at arbitration in a wage dispute is entitled to attorney fees under RCW 49.48.030. *Hitter,* 66 Wn. App. at 396. But we also held that the party seeking fees had waived that entitlement under an agreement that specifically stated that "[t]he fees and expenses of the arbitrator shall be shared equally by [the parties, and a]ll other expenses shall be borne by the party incurring them." *Id.* at 397.

Here, unlike in *Hitter*, the attorney fees provision in the CR 2A agreement does not mention arbitration—much less does it address fees incurred in future

judicial proceedings to confirm or vacate an arbitration award. Instead, the only reasonable interpretation of the provision is that each party was to bear their own fees incurred in connection with entering into the agreement itself. Jie's reliance on *Hitter* is misplaced.

Jie next contends that the trial court "overlooked" that Steve's attorney fees "were incurred . . . for obtaining fraudulent orders from the Court through his counsel's three instances of fraud upon the court," and "[i]t is axiomatic that fraud vitiates everything." But for reasons already discussed, Jie's claim that the trial court's challenged orders were obtained through fraud lack merit.

In sum, Jie does not establish that the trial court erred by concluding that Steve, who prevailed below, was entitled to fees under the UAA for the fees he incurred in connection with confirming the arbitrator's award and then carrying it out after Jie herself did not timely do so.

*Contempt Hearing Fee Award*

Jie also maintains that we must vacate the commissioner's order awarding Steve fees for defending against Jie's contempt motion. We disagree.

Jie asserts that under RCW 26.09.160(7), a court is authorized to order the party moving for contempt to pay the nonmoving party's fees only if "the court finds the motion was brought without reasonable basis." And here, the commissioner did not make that finding in their order denying Jie's contempt motion and awarding Steve his attorney fees. But Jie did not appeal from that order. Instead, she appealed from the superior court's order denying her motion to revise the commissioner's order *denying reconsideration* of that order. We

15

review the superior court's decision for an abuse of discretion. *Applied Restoration*, 28 Wn. App. 2d at 890; *see also In re Marriage of Williams*, 156 Wn. App. 22, 27, 232 P.3d 753 (2010) ("When an appeal is taken from an order denying revision of a court commissioner's decision, we review the superior court's decision, not the commissioner's.").

In her motion for reconsideration, Jie argued only that an award of fees was precluded by the language in the CR 2A agreement stating, "Neither party shall pay any attorney fees or costs to or for the benefit of the other party." For reasons already discussed, that argument is without merit. It was not until Jie moved to revise the commissioner's order denying reconsideration that she raised the issue of whether the commissioner erred under RCW 26.09.160(7).

Jie does not address this procedural history much less show that the trial court abused its discretion by declining to revise based on an issue that was not before the commissioner. *Cf. In re Marriage of Moody*, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999) ("Generally, a superior court judge's review of a court commissioner's ruling, pursuant to a motion for revision, is limited to the evidence and issues presented to the commissioner."). Accordingly, she does not establish a basis for reversing the trial court's denial of her motion to revise the commissioner's order denying reconsideration.

*Fees on Appeal*

Steve requests an award of fees on appeal under (1) the UAA, (2) RCW 26.09.140, the discretionary attorney fee statute for dissolution proceedings, and

(3) RAP 18.9(a) as a sanction for a frivolous appeal.  We may award attorney fees on appeal if authorized by applicable law.  RAP 18.1(a).

As noted, the UAA provides that "[o]n application of a prevailing party to a contested judicial proceeding [to confirm, vacate, modify, or correct an arbitration award], the court may add to a judgment . . . attorneys' fees and other reasonable expenses of litigation incurred."  RCW 7.04A.250(3).  Because Steve is the prevailing party with regard to Jie's appeal from the orders entered to confirm and effectuate the arbitration award, we grant his request for fees incurred in connection with Jie's appeal from those orders, subject to his compliance with RAP 18.1(d).[11]  *Cf. Saleemi v. Doctor's Assocs., Inc.*, 166 Wn. App. 81, 98, 269 P.3d 350 (2012) (awarding fees to substantially prevailing party in appeal from confirmation of arbitration award).

However, we deny Steve's request for fees on appeal to the extent incurred in connection with Jie's appeal from the order denying revision of the commissioner's contempt hearing fee award.  That aspect of Jie's appeal is not governed by the UAA.  Furthermore, Jie's arguments in that part of her appeal were not frivolous, and Steve did not timely file a financial affidavit as required by RAP 18.1(c) when "applicable law mandates consideration of the financial resources of one or more parties regarding an award of attorney fees and expenses."  *Cf. Advocates for Responsible Development v. W. Wash. Growth*

---

[11]  Because we grant Steve's request under the UAA, we need not decide whether RCW 26.09.140 or RAP 18.1 support an award of fees incurred in connection with Jie's appeal from the orders entered to confirm and effectuate the arbitration award.

*Mgmt. Hearings Bd.*, 170 Wn.2d 577, 580, 245 P.3d 764 (2010) ("An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ, and that the appeal is so devoid of merit that there is no possibility of reversal."); *In re Marriage of French*, 32 Wn. App. 2d 308, 319, 557 P.3d 1165 (2024) (in exercising discretion under RCW 26.09.140, " 'we consider the issues' arguable merit on appeal and the parties' financial resources, balancing the financial need of the requesting party against the other party's ability to pay' " (quoting *In re Marriage of Kim*, 179 Wn. App. 232, 256, 317 P.3d 555 (2014))).

We affirm.

WE CONCUR: